Jerry COBB, Hayden Lait, and Dan M. Norwood, on Behalf of Themselves and the Citizens and Taxpayers of the County of Shelby, Plaintiffs–Appellants,

v.

SHELBY COUNTY BOARD OF COMMISSIONERS, et al., Defendants–Appellees.

Supreme Court of Tennessee, at Jackson.

May 8, 1989.

Dan M. Norwood, Hayden Lait, Memphis, for plaintiffs-appellants.

Brian L. Kuhn, Shelby County Atty., Memphis, for defendants-appellees.

## OPINION

DROWOTA, Chief Justice.

As taxpayers and citizens of Shelby County, Plaintiffs brought this action to declare invalid an ordinance authorizing new salaries for the members of the Shelby County Board of Commissioners. They sought to enjoin payment under the ordinance and to recoup for the County treasury any sums paid out. The complaint alleged the disputed amounts were an illegal increase in the Commissioners' remuneration specifically prohibited by article II, section 2.04 of the Shelby County Home Rule Charter, and generally prohibited by T.C.A. § 5-5-107 and public policy as reflected in various provisions of the Tennessee Constitution. Named as defendants were the Commissioners, the Mayor, and two financial officers of Shelby County.

The Chancellor granted summary judgment for Plaintiffs on finding that they had standing to litigate the issue and that the

ordinance was invalid. The Court of Appeals reversed and dismissed the cause, holding that plaintiffs lacked standing to litigate the matter because the charter and other authority asserted did not prohibit the disputed salaries. We granted an appeal to consider these conflicting rulings.

The dispute arose when the first Board of Commissioners of Shelby County elected under the new government adopted an ordinance authorizing for themselves an annual salary of $16,500. The salary under the previous government had been fixed by private act at $6,000. The facts were stipulated on cross motions for summary judgment.

By referendum of August 1, 1984, the voters of Shelby County adopted a Mayor–County Commission form of government. Except for provisions for the election of officials, the Charter became effective September 1, 1986. The first Board of Commissioners was elected in August 1986, and met at its first opportunity, September 8. Ordinance No. 3, at issue here, was submitted then and at the two succeeding meetings; and on September 22, 1986, it was adopted upon its third and final reading. By its terms, the $16,500 salary went into effect immediately upon the effective date of the ordinance, which was October 8, 1986.[1] From September 1 until this date the County fiscal officer had issued checks to the Commissioners reflecting an annual salary of $6,000.

By letter of October 10, Plaintiffs requested that the Mayor prevent disbursement of funds for the salaries authorized by Ordinance No. 3, asserting that it constituted an unlawful increase. Immediately the County Attorney advised the Mayor that the new salaries had been duly adopted and that absent an injunction he could not lawfully comply with the citizens' demand.

## I

The initial question is whether our courts will entertain a taxpayer suit contesting the legality of payments made to county officials from public funds; that is, whether a taxpayer/citizen has standing to litigate the issue presented in the complaint.

It is not at this point appropriate to examine the merits of the ultimate question. The Court should determine whether a party may litigate the legality of a public officer's payments to himself, without first deciding whether those payments are, in fact and law, illegal. Because citizen suits do burden the conduct of public affairs, a defendant entity or officer should not be obliged to defend on the merits if he is entitled to a dismissal for lack of standing. Nor should the court critique the conduct of public officials if the cause is not justiciable.[2]

▆▆▆ The elements of taxpayer standing with respect to disbursement of local government funds were summarized in *Badgett v. Rogers,* 222 Tenn. 374, 436 S.W.2d 292 (1968), and noted in the subsequent case of *Metropolitan Government of Nashville ex rel. Anderson v. Fulton,*

---

**1.** AN ORDINANCE APPROVING AND SETTING THE SALARY OF THE BOARD OF COUNTY COMMISSIONERS

WHEREAS, the Shelby County Charter, Article II, Section 2.04(A) and Article VII, Section 7.12(A), authorizes the first Board of County Commissioners to set their salary and expense accounts; and

SECTION 1. BE IT ORDAINED BY THE BOARD OF COUNTY COMMISSIONERS OF SHELBY COUNTY, TENNESSEE, That pursuant to the above mentioned Charter provisions, that the salary of each County Commissioner of this body for the term of office beginning with the effective date of this Ordinance and ending August 31, 1990, be and the same shall be $16,500.00 Dollars annually.

SECTION 2. BE IT FURTHER ORDAINED, That an expense allowance shall be allowed in the amount of Three Hundred ($300.00) Dollars per month.

SECTION 3. BE IT FURTHER ORDAINED, that this ordinance shall take effect pursuant to Shelby County Charter, Article II, Section 2.06(C)(4) fifteen (15) days after the date of its passage, signed by the Chairman of the County Commission, certified and delivered to the Office of the Mayor in writing as provided in Shelby County Charter, Article II, Section 2.06(F), and become effective as otherwise provided by law.

**2.** *See generally* Kritchevsky, *Justiciability in Tennessee, Part Two: Standing,* 15 Mem.St.L.Rev. 179 (1985).

701 S.W.2d 597 (Tenn.1985). Taxpayers have a sufficient interest in the disposition of public funds to present the issue in an adversary fashion, but due consideration for the conduct of public affairs requires that plaintiffs first have notified appropriate officials of the illegality and given them an opportunity to take corrective action short of litigation. The complaint must allege a specific legal prohibition on the disputed use of funds or demonstrate that it is outside the grant of authority to the local government. It has always been recognized that a taxpayer/citizen has standing to challenge "illegal" uses of public funds but not "improvident" ones—"the wisdom, policy, injurious tendency, or mischievous consequences of a statute or ordinance are not open to inquiry." *Soukup v. Sell,* 171 Tenn. 437, 441, 104 S.W.2d 830, 831 (1937). Finally, the action must be brought against the delinquent public officials. The courts will not entertain a citizen action to recoup public funds from private individuals. *See Metro v. Fulton,* 701 S.W.2d at 600; *Trigg v. Mansfield,* 648 S.W.2d 946 (Tenn.App.1982) (distinguishing *State ex rel. Vaughn v. King,* 653 S.W.2d 727 (Tenn.App.1982)).

The *Badgett* case has been given different interpretations by the parties here, as well as by the lower courts, but it is particularly apposite.

In *Badgett* taxpayer/citizens sued to recoup monies paid and to enjoin further payments to the Mayor of Knoxville from public funds. Named as defendants were the Mayor and finance director of the City of Knoxville. The complaint alleged that payments made through an expense account, authorized by the city council, caused the Mayor's compensation to exceed a $15,000 limitation placed on his salary by the City Charter. This Court held that plaintiffs did have standing to seek relief for the alleged misappropriation of public funds. On the merits, the court sustained

the defendants' demurrer, citing *Burns v. City of Nashville,* 142 Tenn. 541, 221 S.W. 828 (1920), which held there was no general legal prohibition on a city council's authorization of expense accounts.

Subsequent decisions have not overruled *Badgett.* Most deal with matters other than the expenditure of public funds and follow from the leading case of *Patton v. Chattanooga,* 108 Tenn. 197, 65 S.W. 414 (1901), in which it was held that taxpayer/citizens did not have standing to litigate the city's grant of a franchise. *See, e.g., Bennett v. Stutts,* 521 S.W.2d 575 (Tenn. 1975) (violation of statute requiring open meetings); *Sachs v. Shelby County Election Commission,* 525 S.W.2d 672 (Tenn. 1975) (suit to declare void an act of the constitutional convention as outside the "call").

Another case, *Metropolitan Government of Nashville ex rel. Anderson v. Fulton,* 701 S.W.2d 597 (Tenn.1985), did involve an allegedly illegal expenditure of public funds. There a citizen sued Mayor Richard Fulton and attorney George Barrett to recoup attorney fees paid to Barrett for representation on behalf of the Metropolitan Government. We held the plaintiff had no standing to recover funds from the attorney, a private citizen. But as to the Mayor, we held the plaintiff lacked standing because he had made no prior demand on the Council for corrective action. *Id.* at 601. This holding was entirely consistent with the holding and discussion in *Badgett.*

■ Plaintiffs in the present case have alleged, and the parties have stipulated facts supporting all the elements of taxpayer standing in a case of this nature—1) taxpayer status, 2) specific illegality in the expenditure of public funds, and 3) prior demand. Plaintiffs are thus entitled to a ruling on the merits of the case.[3]

---

3. The Court of Appeals initially held "that the plaintiffs lacked standing to bring this action." The Court then proceeded to address the issue of the validity of the ordinance, finding "The action complained of did not amount to an increase but instead to the establishment of the initial salary. Ordinance No. 3 was a valid ordinance and did not violate the terms and provisions of the Charter. There was no misuse or unlawful diversion of funds under Ordinance No. 3. Thus, plaintiffs lack standing to bring this action."

## II

Is Ordinance No. 3 invalid under the Shelby County Charter? Plaintiffs rely principally upon the prohibition on increased compensation which appears in section 2.04(A) of the Charter:

The Board of County Commissioners may set their own salary and expense accounts. *The compensation allowed any member of the County Board of Commissioners, whether salary, expense or otherwise shall not be raised during their term of office,* and shall not be increased or decreased for the next term of office after January 1 of the year in which the County Commission is to be elected for said next term.

(emphasis added).

This familiar proviso is included in Article II of the Charter, which is entitled "Legislative Branch," and presumably applies generally to the powers of the Commission under the new government.

■ Defendants concede that section 2.04(A) would bar future Boards from enacting an immediately effective increase in salary, but they insist that section 7.12(a) of the Charter permits the first Board elected under the new government to set a salary without reference to the salaries in effect under the former county government. Section 7.12(a) provides:

The salary of the first Board of County Commissioners elected under this Charter *shall be as prescribed by State general law for Boards of County Commissioners;* the expenses or any other form of remuneration provided for the first Board of County Commissioners elected shall be that as provided on June 15, 1984.

(emphasis added).

This part appears in Article VII, which is entitled "Transition Provisions," and is clearly and solely directed to the compensation of the defendant Board of Commissioners. It includes no restrictions on the salary of the first Commission, as it does on expenses and other remuneration, limiting them to amounts in effect before the Charter referendum.

Obviously section 7.12 is a specific provision, and as between different portions of the same enactment it controls. It should be construed in harmony with other parts of the Charter, but it should not be given a construction that renders it meaningless or useless. *See Mercy v. Olsen,* 672 S.W.2d 196, 200 (Tenn.1984). If, as Plaintiffs argue, this section is identical to section 2.04, it is superfluous.

The first question, therefore, is whether there is in the words of section 7.12, "State general law for [salaries of] Boards of Commissioners." Both parties rely on T.C.A. § 5–5–107 (Supp.1988) as the general law. Subsection (a) of the statute specifically authorizes the "several county legislative bodies ... to fix the compensation of their membership in attending sessions of the county legislative body and duly authorized committees thereof." Subsection (b)(1) sets forth minimum per diem limits for counties of the third to the eighth class. Subsection (b)(2) sets a minimum and maximum monthly amount for counties of the second class but permits the county legislative body to fix the amount for members of "its successor county legislative body." Subsection (c) reiterates that the members shall be paid "[t]he amount provided in this section or a greater amount provided by resolution duly adopted by the county legislative body." Subsection (d) deals with compensation for attending committee meetings, and (e) deals further with counties of the second class.[4]

Shelby County is a county of the first class. Section 5–5–107 provides that county legislative bodies are authorized to set their own compensation, subject to certain limitations on counties of classes two through eight. It places no limitation on

---

**4.** As originally enacted the statute only placed minimum per diem compensation limits on counties of classes 3 through 8, 1974 Tenn.Pub. Acts Ch. 736, § 1, apparently because larger counties commonly used a monthly formulation. *See* H.B. 1783, Mar. 13, 1974, Tape H–201 (Remarks of Rep. Bragg). Later a fixed monthly amount was set for counties of the second class. 1978 Tenn.Pub.Acts Ch. 934, § 15. And still later, the further limitations appearing at § 5–5–107(b)(2) were placed on counties of the second class. 1980 Tenn.Pub.Acts Ch. 687 § 1.

amount of compensation for counties of the first class; nor does it limit the authority to increase the amount in counties other than those of the second class.

We do not conclude that the absence of restrictions on counties of first class means that the Shelby County legislative body is not authorized in subsection (a) to fix its compensation. Rather, T.C.A. § 5–5–107 authorizes the Shelby County legislative body to fix its compensation without any restriction on amount or effective date, and this authority should be read into the transition section, § 7.12(a), of the Charter.

This construction is not out of harmony with other parts of the Charter. Nothing in section 2.04 restricts the Board in setting an initial salary. Moreover, the transition part deals similarly with other salaries, in that section 7.12(b) directs the first Board to set the Mayor's initial salary, even though section 3.04 would bar it from increasing or decreasing the amount during a term of office.

The Chancellor concluded that a salary of $6,000 was set by the acceptance of compensation at that rate during the first weeks of the new government, and therefore Ordinance No. 3 was an "increase." We agree with the Court of Appeals that the payments have no legal significance here. The setting of salary could be accomplished only by passage of an ordinance, which required three readings. Charter, § 2.06(e). Obviously the Board acted expeditiously. The interim payments made by the financial officer could not constitute a setting of the salary. Similarly, although the Private Act which had set the salaries under the prior government was not repealed automatically, see Charter, § 7.14, it remained in effect only insofar as it was consistent with the Charter and with Board action. The Board had express authority to nullify the private act by repeal or inconsistent action.

Nor are we convinced that Ordinance No. 3 violates the public policy of this state. However salutary may be restrictions on changes of compensation during a term of public office[5], they are in this state and in the authorities cited, a matter of positive law. As seen already, T.C.A. § 5–5–107(c) omits the restriction for most counties. It is true that the members of the General Assembly may increase their compensation only for the next term, or session, Tenn. Const. art. II, § 23, but this is a restriction imposed by the people after adoption by Constitutional Convention. The voters of Shelby County were free to adopt or exclude the restriction in their home rule charter. We conclude they did not adopt the limitation for the transition government and, therefore, Ordinance No. 3 is valid.

Accordingly, the judgment of the Court of Appeals, as modified, is affirmed. Costs are taxed to the Appellants.

FONES, COOPER, HARBISON and O'BRIEN, JJ., concur.

---

**5.** *E.g., Kavanagh v. Brown,* 206 F.Supp. 479, 485 (E.D.Mich.1962) (recognized as sound public policy to prevent official abuse of the public trust and to preserve an official's independence and his expectation of the emoluments of office).