IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 2, 2010 Session

# BOB FANNON, INDIVIDUALLY AND AS A CITY COUNCILMAN FOR THE CITY OF LAFOLLETTE v. CITY OF LAFOLLETTE, ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Campbell County**
**No. 13947    John D. McAfee, Judge**

**No. E2008-01616-SC-R11-CV - Filed December 21, 2010**

An elected council member of the City of LaFollette filed a declaratory judgment action alleging that three other members of the council had violated the terms of the Open Meetings Act in the process of adopting a resolution to increase the pay of various city employees. The trial court, after a hearing, granted a temporary restraining order, restricting implementation of the pay raises until the City complied with the procedural requirements of the City Charter. The order did not address the Open Meetings Act allegations. At a subsequent meeting, the Council, apparently in accordance with the requisite guidelines, approved the pay raises. After the Plaintiff filed a motion for summary judgment and then a motion seeking attorney's fees and costs, the trial court dismissed the Open Meetings Act claim as moot, but awarded fees and costs to the council member who had initiated the suit. The order did not address a challenge by the City to the council member's standing to sue. On direct appeal by the City, the Court of Appeals confirmed that the council member had standing as a taxpayer, rather than in his official capacity, but reversed the award of attorney's fees and costs. Because the litigation involves issues of public interest, this Court granted an application for permission to appeal. We hold that the council member had no standing to sue as a council member or a taxpayer, but that he did have standing based upon his allegations of an Open Meetings Act violation. As the prevailing party, he is entitled to an award of discretionary costs, but not attorney's fees. The judgment is, therefore, affirmed in part and reversed in part, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11; Judgment of the Court of Appeals Affirmed in Part and Reversed in Part and Remanded**

GARY R. WADE, J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., JANICE M. HOLDER, and SHARON G. LEE, JJ., joined. WILLIAM C. KOCH, JR., J., filed a

separate opinion concurring in part and concurring in the judgment.

David H. Dunaway, LaFollette, Tennessee, for the appellant/plaintiff, Bob Fannon.

J. Stephen Hurst, LaFollette, Tennessee, for the appellants/defendants, Hansford Hatmaker, Mike Stanfield, and Ken Snodderly.

Jon G. Roach and Emily A. Cleveland, Knoxville, Tennessee, for the appellee/defendant, the City of LaFollette.

**OPINION**

**Facts and Procedural History**

On July 10, 2007, Bob Fannon (the "Plaintiff"), a councilman for the City of LaFollette, filed a suit for declaratory judgment,[1] contending that councilmen Hansford Hatmaker and Mike Stanfield, named as defendants individually and in their official capacities (the "Defendants"), violated the Tennessee Open Meetings Act, Tenn. Code Ann. §§ 8-44-101 to -111 (2002 & Supp. 2010),[2] by meeting informally with certain city employees to discuss pay raises and to consider candidates for vacancies in the offices of City Clerk and Treasurer. A third council member, Ken Snodderly, who ultimately voted in favor of the pay raises, was also named as a Defendant, both individually and in his official capacity; the City of LaFollette (the "City") was also included as a defendant.[3] As to the informal meeting at issue, the Plaintiff more specifically alleged as follows:

[P]rior to June 28, 2007, and at a time when the City Administrator was away

---

[1] A declaratory judgment action empowers courts "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Tenn. Code Ann. § 29-14-102 (2000); see also Tenn. R. Civ. P. 57.

[2] The Open Meetings Act provides, in part, that "[a]ll meetings of any governing body are declared to be public meetings open to the public at all times, except as provided by the Constitution of Tennessee." Tenn. Code Ann. § 8-44-102(a). A "governing body" includes "members of any public body which consists of two (2) or more members, with the authority to make decisions for or recommendations to a public body on policy or administration . . . ." Tenn. Code Ann. § 8-44-102(b)(1)(A). "Any such governmental body which holds a meeting not previously scheduled . . . shall give adequate public notice of such meeting." Tenn. Code Ann. § 8-44-103(b). See Zseltvay v. Metro. Gov't of Nashville & Davidson Cnty., 986 S.W.2d 581, 584 (Tenn. Ct. App. 1998) (noting that the Open Meetings Act does not distinguish between "technical" and "substantive" violations).

[3] All of the defendants, including Snodderly and the City, are referred to throughout this opinion as the "Defendants."

from the City . . . , the Defendants, Hansford Hatmaker and Mike Stanfield, met with various employees at [a City] meeting room, at which time raises were planned for certain employees of the City . . . and discussions were held for the filling of the positions of City Clerk and City Treasurer. <u>That at the end of the meeting, a decision was made that a motion would be introduced at the next City Council meeting . . . to include pay raises, as well as the filling of positions by the City</u> . . . .

(Emphasis added).

The Plaintiff contended that "the discussions concerning pay raises and the filling of positions with the City . . . were of such pervasive importance that proper notice concerning these discussions should have been given to the general public, as well as to the Mayor, the entire City Council, and the City Administrator . . . in accordance with" the Open Meetings Act, which requires "adequate public notice" prior to meetings of a governmental body. Tenn. Code Ann. § 8-44-103(a). The Plaintiff, who also sought attorney's fees and costs as a part of the claim, demanded that the actions be declared void and that a temporary restraining order be issued prohibiting the Defendants from granting pay increases to the selected employees.

The Plaintiff also filed a motion for a temporary injunction, requesting that the Defendants be restricted from granting the pay raises or otherwise amending the budget "without compliance with [the] Open Meeting Act." While the caption of the motion used the term "temporary injunction," the Plaintiff's supporting memorandum made reference to a "temporary restraining order."[4] At the hearing on the Plaintiff's motion, Brad Myers, the Data Processing Manager for the City, acknowledged that Hatmaker and Stanfield had initiated a meeting to discuss his salary shortly before a regularly scheduled Council meeting on June 28, 2007. Myers, who confirmed that the meeting was not a "called meeting" because the public had not been invited to attend, testified that the Defendants participated in the discussions and that Hatmaker offered him a salary of $25,000, which Myers refused.

David Young, the City Administrator, testified that he had not made any

---

[4] A "restraining order," which "shall only restrict the doing of an act," Tenn. R. Civ. P. 65.01, may be issued without oral or written notice to an adverse party required under Rule 65.04 of the Tennessee Rules of Civil Procedure. See Tenn. R. Civ. P. 65.03(1). A "temporary injunction," which "may restrict or mandatorily direct the doing of an act," Tenn. R. Civ. P. 65.01, may be issued only after notice to the adverse party. See Tenn. R. Civ. P. 65.04(1). Because the trial court's order was entered after notice to the Defendants and a hearing on the issues presented, the order was in the nature of a temporary injunction. Nevertheless, the term "restraining order," as it appears in the record, is utilized throughout this opinion.

recommendations with regard to the pay raises at issue. The LaFollette City Charter, which was made a part of the record during Young's testimony, provides that one of the City Administrator's duties is to make recommendations to the Council for salary adjustments to city employees.[5]

Other Charter provisions were pertinent to the ruling by the trial court. Article IV establishes the City Council, consisting of the City Mayor and four members of Council, and vests the Council with "all corporate, legislative, and other powers of the city, except as otherwise provided in this charter." Section 4 of Article IV requires that "[t]he City Council . . . exercise its powers only in public meetings." Article V of the Charter, which allows the Council to appoint an Administrator and lists the requirements of that position, specifically provides that "[i]t shall be the duty of the Administrator to supervise and coordinate all administrative activities of the affairs of the city under the City Council." Section 4 of Article V further specifies that the Administrator has the duty to (a) "recommend to the City Council the employment, dismissal, promotion, or demotion of any employee, and to keep personnel files on all employees," and (b) "review, approve, and recommend to the City Council a budget for each department. . . ." Section 5 of Article V directs that the "City Council and its members shall deal with the administrative services of the city only through the City Administrator."

The minutes of the meeting of the City Council on June 28, 2007, also made a part of

---

[5] Although the complaint did not allege a violation of a specific charter provision, the trial court addressed the city charter issue based on the testimony of the City Administrator. Paragraphs 3 and 4 of the complaint provide some context:

> 3. That this is a proceeding for a declaratory judgment and the enforcement of Tennessee's Open Meeting Law and to otherwise have declared illegal and void various actions which were taken by the Defendants and the City Council for the City of LaFollette at a meeting held on June 28, 2007, at which time certain pay raises were granted by the Defendants and the City Council . . . to various employees . . . .

> 4. [P]rior to June 28, 2007, and at a time when the City Administrator was away from the City . . . on business matters in Canada, the Defendants, Hansford Hatmaker and Mike Stanfield, met with various employees at . . . [a City] . . . meeting room, at which time raises were planned for certain employees of the City . . . and discussions were held for the filling of the positions of City Clerk and City Treasurer. That at the end of the meeting, a decision was made that a motion would be introduced at the next City Council meeting . . . to include pay raises, as well as the filling of positions by the City. . . . This motion was made by the Defendant, Ken Snodderly.

(Emphasis added).

4

the record at the hearing, indicate that Defendant Snodderly made the motion to amend the budget to include the pay raises that had been discussed at the earlier "meeting" involving Hatmaker, Stanfield, and other city employees. After some debate, including the strenuous objections of Mayor Cliff Jennings, Snodderly, Hatmaker, and Stanfield voted to approve the motion. The Plaintiff was the lone dissenting vote.

At the conclusion of the proof, the trial court, observing that the Plaintiff had a "twofold argument" (in reference to the Open Meetings Act and the Charter provisions), found that the Defendants had violated Article V of the Charter by failing to advise the City Administrator of the proposed pay raises prior to meeting with the employees and by subsequently approving the raises at the meeting on June 28, 2007. After restricting "any further action to grant these pay raises until there has been compliance with the City Charter. . . and a review by the City Administrator and the City Council," the trial court made further observations as follows:

> If you look back at Article V . . . of the charter, and what the city charter does is they basically incorporate . . . the Tennessee Code Annotated language that says what the duties and responsibilities of the city administrator is. Shall have the duty "[t]o administer, supervise and coordinate all administrative activities of the affairs of the city." . . . [Y]ou see the word "all," that means all.
>
> . . . .
>
> <u>Nothing is ever said [by the Defendants] to the administrator prior to that meeting. That has to be in conflict with Article V of the charter.</u>

(Emphasis added). The trial court did not make a ruling as to the Open Meetings Act claim.

On August 7, 2007, at the next meeting of the Council following the issuance of the temporary restraining order, the Council approved the proposed pay raises by the same vote of three to one with the Plaintiff dissenting. No issue has been made as to the propriety of the public notice for this meeting or to any lack of compliance with the Charter provisions. On August 13, 2007, the Plaintiff filed a motion for summary judgment with regard to the alleged Open Meetings Act violation. In response, the Defendants claimed that there were genuine issues of fact as to whether the Open Meetings Act had been violated and alleged that no testimony had been presented on the issue. In the alternative, the Defendants asserted the doctrine of mootness, contending that the City Council's action on August 7, 2007, approving the budget amendments was in accordance with law. Holding that the Open Meetings Act claim had become moot as a result of the resolution adopted at the City's August 7, 2007 meeting, the trial court denied the motion for summary judgment, because

"it was obvious . . . in the first hearing that part of the charter had not been complied with where the administrator was not made aware of the pay raises that were granted."

On February 28, 2008, the Plaintiff filed a motion for attorney's fees and discretionary costs based on the fact that he "successfully demonstrated his right to obtain a temporary injunction" and, as an elected official, "was entitled to be represented at public expense." On March 20, 2008, the Defendants filed a response, and for the first time, challenged the Plaintiff's standing to sue. The trial court granted the Plaintiff's motion for attorney's fees and discretionary costs for his "having [had] to mount the lawsuit because of the Defendants' alleged wrongdoing" and for "achieving the goal of ensuring that th[e] raises were implemented in a manner that was faithful to law." While concluding that the Plaintiff "prevailed on the issue in reference to the charter, and that the Open Meetings Act had become moot after the city had a subsequent meeting in reference to the issue about pay raises," the trial court awarded $7,500 in attorney's fees and granted the Plaintiff $638.05 in discretionary costs. The court reasoned "that when a public official sues or has been sued in his official capacity, he is entitled to be represented at the public expense." The standing issue was not addressed.

On appeal by the Defendants, our Court of Appeals reversed, first holding that the Plaintiff had standing as a taxpayer to bring the suit for declaratory judgment, but also ruling that he was not a "prevailing party," and therefore not entitled to recover attorney's fees and costs. We granted permission to appeal in order to consider the issue of standing, to determine whether the Plaintiff qualifies as a "prevailing party," and to ascertain whether he is otherwise entitled to recover attorney's fees or costs.

## Standing

Although the Court of Appeals held that the Plaintiff had standing to sue as a taxpayer, the Plaintiff now alleges error by its ruling that he did not have standing in his official capacity as a councilman for the City of LaFollette, a distinction that may arguably have an effect upon his entitlement to attorney's fees and costs. In response, the Defendants maintain that the Plaintiff lacked standing to sue either in his official capacity or in his capacity as a city taxpayer.

### *General Principles*

Standing, "a judge-made doctrine which has no per se recognition in the rules," is essential for a resolution on the merits of a legal controversy. Knierim v. Leatherwood, 542 S.W.2d 806, 808 (Tenn. 1976); see also Am. Civil Liberties Union of Tenn. v. Darnell, 195 S.W.3d 612, 619-21 (Tenn. 2006); Mayhew v. Wilder, 46 S.W.3d 760, 766-67 (Tenn. Ct. App. 2001). In general, courts are precluded "from adjudicating 'an action at the instance of one whose rights have not been invaded or infringed.'" Darnell, 195 S.W.3d at 619

(quoting Mayhew, 46 S.W.3d at 767). "Without limitations such as standing and other closely related doctrines 'the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights.'" Id. at 620 (footnote omitted) (quoting Warth v. Seldin, 422 U.S. 490, 500 (1975)).

In order to establish standing to sue, a plaintiff must establish the following elements by a preponderance of the evidence: (1) "a distinct and palpable injury," rather than one that is "conjectural or hypothetical"; (2) "a causal connection between the claimed injury and the challenged conduct"; and (3) "that the alleged injury is capable of being redressed by a favorable decision of the court." Darnell, 195 S.W.3d at 620; see also Jordan v. Knox Cnty., 213 S.W.3d 751, 764 (Tenn. 2007); Metro. Air Research Testing Auth., Inc. v. Metro. Gov't. of Nashville & Davidson Cnty., 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992); cf. Osborn v. Marr, 127 S.W.3d 737, 740 (Tenn. 2004) (considering the issue of standing as a component of jurisdiction when prescribed by statute "even though it was not raised below by the parties").

*Standing – Official Capacity*

In Darnell, this Court recognized that "[l]egislators have no special right to standing simply by virtue of their status: like other plaintiffs, legislators must establish a distinct, concrete injury in fact." 195 S.W.3d at 625. In that case, a group of legislators, citizens, and civil liberties organizations filed a suit seeking to enjoin the defendants from placing on the ballot a "marriage amendment" to the Tennessee Constitution, claiming the requisite publication was untimely. Id. at 617 & n.3, 618. This Court concluded that the legislators lacked standing to sue, explaining as follows:

> Although the legislator Plaintiffs were outvoted, the record reveals that they had ample opportunity to discuss [the measure] prior to the vote and to [then] vote on the measure. In short, the legislator Plaintiffs have failed to establish that the effectiveness of their vote or any of their other legislative powers was impeded by the alleged untimely publication. Thus, the legislator Plaintiffs have failed to establish an injury sufficient to confer standing.

Id. at 626 (emphasis added); see also Mayhew, 46 S.W.3d at 767 ("A legislator does not have a special standing to challenge a statute where the statute does not impede his legislative power.").

As this Court observed in Darnell, "official" standing exists only where a litigant has demonstrated that his or her legislative power was impeded. Coleman v. Miller, 307 U.S.

7

433 (1939), an earlier decision by the United States Supreme Court, serves as an example of legislative impediment. Twenty Kansas state senators, who voted against a resolution proposing a constitutional amendment, challenged the Lieutenant Governor's right to cast the deciding vote in favor of the resolution. Id. at 436. The Supreme Court held that the twenty plaintiffs, having "a plain, direct and adequate interest in maintaining the effectiveness of their votes," had standing to sue because, if their claims were meritorious, the resolution would have failed. Id. at 438, 446. Ultimately, however, the Supreme Court declined to intervene as to the ruling by the state supreme court that the Lieutenant Governor was authorized to vote. Id. at 447.

In Peeler v. Luther, 135 S.W.2d 926 (Tenn. 1940), this Court held that the chairman of a County Highway Commission had standing to seek the recovery of funds that had been illegally diverted by the prior chairman. There, a statute provided that "[s]uits for the use and benefit of any county in this state against any delinquent officer . . . for moneys or funds due such county, shall be brought in the name of the State of Tennessee, for the use of the county for the benefit of which suit may be brought." Id. at 928. This Court concluded as follows:

> [I]t is plausibly argued . . . that the funds involved being County highway funds, the complainant, as acting Chairman of the Highway Commission, is authorized to prosecute this suit to recover a portion of these funds allocated by law to his charge. He is more than a private citizen and taxpayer, with an interest common to others in this class."

Id. (emphasis added). The Court found particularly instructive the fact that the Act creating the Board of Highway Commissioners for Hickman County granted a commissioner the power to hire attorneys "whenever they deem it to the advantage and interest of the county in matters pertaining to public roads." Id. at 928-29.

In our view, however, the ruling in Abel v. Welch, 315 S.W.2d 268 (Tenn. 1958), more closely applies to the circumstances in the case before us today. This Court held that members of the Rhea County Purchasing and Financing Commission lacked the standing to file a lawsuit against the Rhea County Supervisor of Roads. Emphasizing that the members of the commission had no legal existence apart from the governmental authority of Rhea County, the Court ruled that the commissioners neither had standing to file suit against the Supervisor of Roads nor had the authority to employ an attorney to bring the action. Id. at 270. This Court observed that the Purchasing and Financing Commission and the Supervisor of Roads "[held] their respective offices pursuant to the provisions of Chapter 313 of the Private Acts of 1955," and that the lawsuit was, in effect, filed by opposing members of the same governmental body. Id. at 268.

8

Likewise, in the case before us, the Court of Appeals relied on <u>Malone v. City of Knoxville</u>, No. E2002-00734-COA-R3-CV, 2003 WL 21018633 (Tenn. Ct. App. May 5, 2003), for the proposition "that status as a city councilman is not a sufficient personal stake in the outcome of a controversy to demonstrate standing." <u>Fannon v. City of LaFollette</u>, No. E2008-01616-COA-R3-CV, 2010 WL 92540, at \*12 (Tenn. Ct. App. June 18, 2010). In <u>Malone</u>, city council members who had voted against an ordinance passed by vote of the entire council argued that they had standing to challenge an ordinance, which created a hearing officer for beer issues, based upon their oaths of office and their "unique status as Knoxville City Council Members." <u>Malone</u>, 2003 WL 21018633, at \*2. Rejecting these arguments, the Court of Appeals held that "[t]he duties to uphold state law and the state and federal constitutions which the [council members] assert arise from their oath of office and the[ir] status as members of the city council and beer board are, in our opinion, too general to give them standing." <u>Id.</u> at \*3. Moreover, the Court of Appeals ruled that one's status as a "public official" is not "an exception in itself to the general rule prohibiting a public wrong suit absent a special interest or injury." <u>Id.</u>

By application of the principles articulated in <u>Abel</u> and <u>Malone</u>, we have concluded that the Court of Appeals correctly determined that the Plaintiff lacked standing to bring this action in his official capacity as a member of the LaFollette City Council. Nothing in the Charter grants the Plaintiff or any other council member the authority to initiate a lawsuit on behalf of either the City or its legislative body. To the contrary, the Charter states that the Council, which consists of the City Mayor and four members of the Council, "is vested [with] corporate, legislative, and other powers of the city." Moreover, under the terms of the Charter, a member of the Council may only act through the Council by majority vote.

Lacking the specific authority for filing the lawsuit, the Plaintiff nevertheless argues that he had an obligation to enforce the processes required by the Council. This is nothing more than arguing that his status as a City Council member necessarily includes standing to sue. As stated in <u>Darnell</u>, "[l]egislators have no special right to standing simply by virtue of their status: like other plaintiffs, legislators must establish a distinct, concrete injury in fact." 195 S.W.3d at 625. In particular, a legislator must show that his or her legislative power was impeded by the defendants. <u>Id.</u> (citing <u>Mayhew</u>, 46 S.W.3d at 767). Further, our ruling in <u>Peeler</u> is inapplicable. There, we noted that Peeler's position as highway commissioner specifically vested him with the power to supervise the funds he was seeking to recover and, further, he was given the power to employ attorneys in doing so. <u>Peeler</u>, 135 S.W.2d at 929. No similar basis exists in this case to support the Plaintiff's claim of standing in his official capacity.

*Standing – Taxpayer*

While the Plaintiff did not have standing to sue in his official capacity as a member

of City Council, the Court of Appeals ruled that he did have standing as a taxpayer.  The Defendants challenge that ruling.

Over one hundred years ago, this Court observed that where there is no injury that is not common to all citizens, a taxpayer lacks standing to file a lawsuit against a governmental entity.  Patten v. City of Chattanooga, 65 S.W. 414, 420 (Tenn. 1901).  Some forty years ago, this Court articulated the policy reason for the rule:

> The cases which [address] the standing of a taxpayer to sue municipal officials apparently determine standing to sue because of compatibility or the lack of it, in the case presented, with the following considerations:  On the one hand, it is undeniably the right of a taxpayer to know that his taxes are expended properly and are not unlawfully diverted or misused.  On the other hand, the courts have long recognized the necessity of allowing municipal officials to perform their duties without interference from frequent and possibly frivolous litigation and the inexpedience of putting municipal officers at hazard to defend their acts whenever any member of the community sees fit to make the assault, whether for honorable motives or not.  The courts have been commensurately reluctant to usurp or supersede the discretion of municipal authorities to determine which municipal undertakings are necessary and appropriate.

Badgett v. Rogers, 436 S.W.2d 292, 293-94 (Tenn. 1968).

More recently, this Court explained that standing "may not be predicated upon an injury to an interest that [a] plaintiff shares in common with all other citizens" because "[w]ere such injuries sufficient to confer standing, the State would be required to defend against 'a profusion of lawsuits' from taxpayers."  Darnell, 195 S.W.3d at 620.  Stated yet another way, "private citizens . . . cannot maintain an action complaining of the wrongful acts of public officials unless such private citizens aver special interest or a special injury not common to the public generally."  Bennett v. Stutts, 521 S.W.2d 575, 576 (Tenn. 1975); see also State ex rel. DeSelm v. Owings, 310 S.W.3d 353, 358 (Tenn. Ct. App. 2009); Parks v. Alexander, 608 S.W.2d 881, 885 (Tenn. Ct. App. 1980).

There are, however, exceptions to this general rule, and our courts typically confer standing when a taxpayer (1) alleges a "specific illegality in the expenditure of public funds" and (2) has made a prior demand on the governmental entity asking it to correct the alleged illegality.  Cobb v. Shelby Cnty. Bd. of Comm'rs, 771 S.W.2d 124, 126 (Tenn. 1989); see also State ex rel. v. Brown, 21 S.W.2d 721, 723 (Tenn. 1929).  As this Court explained in Cobb, the taxpayer's complaint "must allege a specific legal prohibition on the disputed use

of funds or demonstrate that it is outside the grant of authority to the local government." 771 S.W.2d at 126; see also Metro. Gov't of Nashville & Davidson Cnty. ex rel. Anderson v. Fulton, 701 S.W.2d 597, 601 (Tenn. 1985). In establishing that a prior demand has been made, a plaintiff is required to "first have notified appropriate officials of the illegality and given them an opportunity to take corrective action short of litigation." Cobb, 771 S.W.2d at 126; see also id. at 125 (finding that plaintiffs satisfied their burden by demonstrating that a prior demand had been made when they sent a letter to the mayor requesting "that [he] prevent disbursement of funds for the salaries authorized by [ordinance], asserting that it constituted an unlawful increase"). A prior demand "is excused [only] where the status and relation of the involved officials to the transaction in question is such that any demand would be a formality." Badgett, 436 S.W.2d at 295.

The rulings in these cases demonstrate that the misuse or diversion of public funds may entitle the taxpayer standing to sue. In the complaint for declaratory judgment, the Plaintiff not only alleged that the Defendants failed to comply with the Open Meetings Act by meeting privately with various city employees to negotiate salaries, he specifically claimed the misuse of public funds:

> 9. [W]hile other aspects of the budget for the City . . . were discussed at length and deliberated thoroughly at the meeting held on June 28, 2007, the plan to spend $42,000.00 in salary increases and the creation of a new part-time position was thrown in as a last minute plan to substantially increase the pay for a select handful of City employees at the expense of the taxpayers of the City . . . .

> 10. [T]he plan to grant salaries to a handful of employees, as well as a plan to amend the budget, was of such pervasive importance that adequate notice should have been given to the public, the Mayor, and the City Administrator . . . .

The proof, as previously stated, demonstrated that the procedure, at the very least, violated the terms of the City Charter, particularly in the context of the duties of the City Administrator.

Nevertheless, the Defendants contend that the Plaintiff lacked standing as a taxpayer because he failed to make a prior demand on the Council to correct the procedural deficiency. Notwithstanding the finding by the Court of Appeals, the Defendants insist that the record does not establish that providing the Council with the opportunity to undertake remedial measures would have been futile. In support of that claim, the Defendants point out that the Council, once made aware of the Plaintiff's challenge, took action to correct the procedural

11

deficiencies at the earliest opportunity.

The Plaintiff filed this suit twelve days after the meeting on June 28, 2007. The record does not indicate that the Plaintiff made a prior demand to correct the illegality or otherwise provide the Council with an opportunity to implement the proper procedure. The Plaintiff did not testify. While the minutes of the June 28, 2007 meeting indicate that the Plaintiff voted "no" on the amendment, he neither complained about the lack of adequate notice for the informal meeting with certain of the city employees nor objected to the failure to comply with the provisions of the City Charter. The minutes suggest that the Plaintiff "was not totally against" the resolution and, while preferring a delay on the measure, was ready to vote. He did not assert that the expenditures were illegal. Moreover, because remedial action was taken at a subsequent meeting of the Council, it is not clear that a demand would have been futile. Thus, the record does not support the Court of Appeals' determination that a demand, if timely made by the Plaintiff, would have qualified as a mere formality – without any prospect of remedial action. Cf. Badgett, 436 S.W.2d at 295 (determining that because a prior demand would have been a "vain formality," citizen taxpayers had standing to challenge a $3,000 stipend to the mayor, who had "patently" contrary interests, for expenses as a misuse of public funds). Under these unique circumstances, the Plaintiff, in our view, failed to demonstrate standing to sue as a taxpayer.

*Standing – Open Meetings Act*

The original complaint specifically alleged a violation of the Open Meetings Act. No specific reference was made to the City Charter issue until the hearing on the motion for a temporary restraining order. The Open Meetings Act provides as follows: "The circuit courts, chancery courts, and other courts which have equity jurisdiction, have jurisdiction to issue injunctions, impose penalties, and otherwise enforce the purposes of this part upon application of any citizen of this state." Tenn. Code Ann. § 8-44-106(a) (emphasis added).

In Metropolitan Air Research Testing Authority, 842 S.W.2d at 613, the Court of Appeals held that the Metropolitan Air Research Testing Authority ("MARTA") had standing to file an action under the Act to challenge bids awarded by the City. That court set forth the familiar requirements for establishing standing, id. at 615, and then concluded that

> in keeping with the remedial nature of the statute, we should interpret the term "citizen" broadly in order to give the Sunshine Law the fullest possible effect consistent with the General Assembly's intent. This court has already concluded that an "unincorporated association" of state residents had standing to bring a Sunshine Law action pursuant to Tenn. Code Ann. § 8-44-106(a). . . .

12

> Since MARTA is a resident of the state, it has standing under Tenn. Code Ann. § 8-44-106(a) to bring suit to test the city's compliance with the Sunshine Law.

Id. at 616 (citations omitted). Later, in Mayhew, the Court of Appeals made similar observations:

> [U]nder the Sunshine Law . . . the Legislature allowed "any citizen of this state" to bring suit to obtain "injunctions, impose penalties, and otherwise enforce the purposes of . . . . [the Sunshine Law]." Tenn. Code Ann. § 8-44-106(a). "When a person is expressly authorized by statute or rule to bring a particular action, his or her right of action arises directly out of the statute, and he or she needs no title under the substantive law to authorize suit." 59 Am. Jur. 2d Parties § 22 (1987).
>
> . . . .
>
> [In] Zseltvay v. Metropolitan Government of Nashville, 986 S.W.2d 581 (Tenn. Ct. App. 1998) . . . we held that the plaintiff, as a citizen of the state, had standing to assert that the Board of Parks and Recreation had violated the Open Meetings Act. We said, "[w]e agree with the appellant that strict compliance with the Act is a necessity if it is to be effective. . . ." [Id.] at 585. Our decision in Zseltvay was an affirmation of our earlier decision in MARTA v. Metro. Gov't . . . . We believe that where the statute says "any citizen" may bring suit to enforce the Sunshine Law, the General Assembly must be taken at its word.

46 S.W.3d at 769 (citations omitted). In our view, a threshold showing of an Open Meetings Act violation is sufficient to confer standing to any citizen. In this instance, the pleadings set out the basis for the claim. Further, at the evidentiary hearing, the City's Data Processing Manager confirmed that the meeting between Hatmaker and Stanfield and certain members of the City staff had not been "called" in the sense that the public had received an invitation to attend. The testimony about lack of adequate notice was largely unrefuted by the Defendants. Under these circumstances, the Plaintiff had standing to challenge the propriety of the pay raises that were discussed in violation of the Act and later authorized at the meeting on June 28, 2007.

### Attorney's Fees

Next, the Plaintiff argues that the Court of Appeals erred by reversing the award of attorney's fees. First, he contends that he was the prevailing party in this litigation.

Secondly, citing Dobson v. Carter (Tenn. Ct. App. Dec. 19, 1980) as controlling authority, he insists that he qualifies for an award of fees because he brought this action in his official capacity to vindicate the public interest.

*Prevailing Party as an Elected Official*

Because the Plaintiff demonstrated his entitlement to obtain a temporary restraining order and was "successful in this cause of action as an elected official," he contends he qualifies as the prevailing party. The Court of Appeals, while rejecting the argument, relied on the following general rule:

> [N]o allowance is provided for in favor of a party who may prevail on an intermediate motion or proceeding. Thus, the fact that plaintiffs are granted a temporary restraining order does not necessarily give them prevailing party status, since the restraining order is not a determination on the merits but merely an attempt to preserve the status quo pending a determination on the merits of their cause.

Fannon, 2010 WL 92540, at *14 (emphasis added) (quoting 20 Am. Jur. 2d Costs § 16 (2005)).

In Daron v. Department of Correction, 44 S.W.3d 478, 480 (Tenn. 2001), this Court was faced with the question of whether a civil service worker, who after being terminated was reinstated with a ten-day suspension on appeal, qualified as a "successfully appealing employee" under Tennessee Code Annotated section 8-30-328(f) (1998).[6] This Court concluded that "the phrases 'prevailing party' and 'successfully appealing employee' are analogous," and ultimately ruled that "a litigant is a 'successfully appealing employee' if the employee succeeds on a 'significant claim' which affords the employee a substantial measure of the relief sought." Daron, 44 S.W.3d at 481; see also Walker v. Sidney Gilreath & Assocs., 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000) (finding the plaintiff to be a prevailing party where he was found less at fault than the defendants).

The United States Supreme Court has likewise addressed the meaning of a "prevailing party." For example, in Texas State Teachers Association v. Garland Independent School District, the Court observed that "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." 489 U.S. 782, 792-93 (1989). Similarly, in Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health

---

[6] Daron, and the statues cited therein, involved grievance procedures by civil service employees. In particular, section 8-30-328(f) states in part that "[t]he commission may, in its discretion, award attorney's fees and costs to a successfully appealing employee."

14

& Human Resources, the Court explained that a prevailing party "is one who has been awarded some relief by the court." 532 U.S. 598, 600-04 (2001), superseded by statute, OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, as recognized in Davis v. United States Dept. of Justice, 610 F.3d 750, 752 (D.C. Cir. 2010).[7] This type of "judicially sanctioned" relief, id. at 605, most often comes in the form of "enforceable judgments on the merits and court-ordered consent decrees." Id. at 604. The Court cited Black's Law Dictionary 1145 (7th ed. 1999), for the proposition that a "prevailing party" is "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded." Buckhannon, 532 U.S. at 603. The Court has also noted that a party need not attain complete success on the merits of a lawsuit in order to prevail. Rather, a prevailing party is one who has succeeded "'on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)).

In the present case, the Plaintiff has cited three recent decisions by our Court of Appeals which apply many of the principles set out above. In Consolidated Waste Systems, LLC v. Metro Government of Nashville & Davidson County, Consolidated Waste challenged the constitutionality of ordinances that prevented the development of its proposed landfill. No. M2002-02582-COA-R3-CV, 2005 WL 1541860, at *1 (Tenn. Ct. App. June 30, 2005). While acknowledging that the ordinances were unconstitutional, the trial court enjoined development of the landfill but permitted Metro a period of time to correct the infirmities in the ordinances. Id. at *49. The Court of Appeals concluded that Consolidated Waste was a prevailing party:

> We agree that the injunction mitigated the effect of the declaratory judgment. After careful consideration, however, we do not think it had the effect of rendering [the Plaintiff] a non-prevailing party. The effect of the declaratory judgment was to render the ordinances unenforceable. That was one of the primary benefits sought. The injunction required Metro to adopt ordinances correcting the constitutional infirmities within a specified time. Therefore, the judgment affected [Metro's] behavior toward [the Plaintiff]. If Metro did not act within the deadline established by the court, it could not have prevented [the Plaintiff] from constructing the landfill where it proposed.

Id. (emphasis added); see also Qualls v. Camp, No. M2005-02822-COA-R3-CV, 2007 WL

---

[7] While the analysis in Buckhannon has been abrogated by the OPEN Government Act of 2007, in that a claimant under the federal Freedom of Information Act may now be a "prevailing party" if he or she obtains relief through administrative or judicial action, we still find the Court's analysis instructive for purposes of interpreting what it means to be a "prevailing party" under Tennessee law.

15

2198334, at \*6 (Tenn. Ct. App. July 23, 2007) (noting that status as a prevailing party arises when the outcome of litigation "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff"); C.S.C. v. Knox Cnty. Bd. of Educ., No. E2006-01155-COA-R3-CV, 2007 WL 1519543, at \*4 (Tenn. Ct. App. May 25, 2007) ("[T]he Plaintiffs obtained sufficiently successful results in the overall litigation to achieve 'prevailing party' status."). Each of these rulings is instructive in our analysis.

Our Court of Appeals, while concluding that the Plaintiff in this case was not a prevailing party, observed that "a temporary restraining order in which the court does not address the merits of the case is not sufficient to give a plaintiff prevailing party status." Fannon, 2010 WL 92540, at \*14; accord Christopher P. ex rel. Norma P. v. Marcus, 915 F.2d 794, 805 (2d Cir. 1990); see also J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ., 287 F.3d 267, 273 (3d Cir. 2002). Although we confirm the viability of the principle as stated, we disagree with its application in these circumstances. In our view, the temporary restraining order entered by the trial court did more than merely sustain the status quo until the underlying dispute could be resolved. After hearing evidence presented by the Plaintiff, the trial court made determinations of fact and law, "enjoin[ing] [the Defendants] from making budget amendments . . . until the same ha[d] been done in compliance with the Charter" and otherwise providing the relief the Plaintiff sought by effectively invaliding the actions taken in the June 2007 meeting. While never addressing the merits of the alleged Open Meetings Act violation, the trial court found that the City Charter had been violated and prohibited the City's implementation of pay raises until the procedural requirements set out in the Charter had been followed.

The "prevailing party" determination is necessarily fact-intensive. While the issuance of the temporary restraining order maintained the status quo, restricting for a time the pay raises to the employees or amendments to the budget, the Plaintiff obtained some relief inasmuch as the effect of the resolution was suspended until and unless the City Council complied with the terms of the Charter. The restriction remained in force until remedial action was taken. That there is no challenge to the resolution adopted at the meeting on August 7, 2007 does not affect the status of the Plaintiff as the prevailing party. The litigation altered the "legal relationship" between the parties and served to modify the "behavior" of the Defendants. Although the trial court ultimately held that whether the Defendant had violated the Open Meetings Act was a moot issue, that was only so because the Plaintiff prevailed on his alternative claim – that the Defendants had violated the terms of the City Charter. Accordingly, we hold that the Plaintiff was a prevailing party.

*American Rule*

Even though the Plaintiff qualifies as the prevailing party, the "American Rule"

16

requires litigants to pay their own legal fees and costs absent a contractual agreement or statutory provision to the contrary. See Taylor v. Fezell, 158 S.W.3d 352, 359 (Tenn. 2005). Recently, this Court reiterated the policy reasons for adhering to the American Rule:

> First, since litigation is inherently uncertain, a party should not be penalized for merely bringing or defending a lawsuit. Second, the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included paying the fees of their opponent's lawyer. Third, requiring each party to be responsible for their own legal fees promotes settlement. Fourth, the time, expense, and difficulty inherent in litigating the appropriate amount of attorney's fees to award would add another layer to the litigation and burden the courts and the parties with ancillary proceedings. Thus, as a general principle, the American rule reflects the idea that public policy is best served by litigants bearing their own legal fees regardless of the outcome of the case.

Cracker Barrel Old Country Store, Inc. v. Epperson, 284 S.W.3d 303, 309 (Tenn. 2009) (quoting House v. Estate of Edmondson, 245 S.W.3d 372, 377 (Tenn. 2008)). Because of the importance of these considerations, "[m]ost Tennessee cases . . . have specifically denied the award of attorney fees where no provision for attorney fees was specifically or expressly included in the statutory language." Id. at 313.

Neither the Declaratory Judgment Act nor the Tennessee Open Meetings Act provide for the award of attorney's fees to a successful litigant. Nonetheless, the Plaintiff argues that these circumstances merit an exception to the American Rule, relying on an unpublished decision by the Court of Appeals, Dobson v. Carter, for support.

In Dobson, a school superintendent was awarded attorney's fees after a successful legal challenge of actions taken by the school board and, in a second suit initiated by the school board, successfully defending the constitutionality of the statute upon which the first ruling was based. In affirming the award, the Court of Appeals emphasized that the superintendent should be represented at public expense if he was sued or being sued in his official capacity. Slip op. at 3-4. The court concluded that to hold otherwise "would have a chilling effect upon the disposition of a superintendent to require a school board to follow the mandates of the Legislature, and would . . . permit the board to violate state statutes with impunity." Id.

Notwithstanding any questions about the correctness of the holding in Dobson, there are significant distinctions between the duties of a school superintendent, whose administrative responsibilities are statutorily defined, and those of a City Council member.

In this instance, the Plaintiff possessed no entitlement under the City Charter to file an action on behalf of the City; moreover, he had no reasonable expectation that he would be reimbursed for attorney's fees if he filed such an action as a taxpayer, see Marshall v. Sevier Cnty., 639 S.W.2d 440, 444 n.5 (Tenn. Ct. App. 1982) (distinguishing the ruling in Dobson), or under the Open Meetings Act. See Tenn. Code Ann. § 8-44-101 et seq. Moreover, no Tennessee court has since adopted Dobson as an exception to the well-established American Rule. We decline to create an exception in this instance.[8]

## Discretionary Costs

Finally, the Plaintiff argues that the trial court properly determined that he was entitled to recover discretionary costs incurred in bringing this lawsuit under Dobson. The Plaintiff's motion listed the following costs: court reporter fees for transcribing the hearing on the motion in 2007, filing fees to the Circuit Court Clerk, and fees for the service of subpoenas on witnesses who testified at the hearing. Later, the Plaintiff sought the costs of the court reporter fees for the final hearing in 2008. The trial court granted the Plaintiff's request for costs, but made no specific findings.

Dobson does not address the recovery of costs, and therefore provides no support for the Plaintiff's claim. Any award of costs, therefore, must be based upon Tennessee Rule of Civil Procedure 54.04, which provides as follows:

(1)    Costs included in the bill of costs prepared by the clerk shall be allowed to the prevailing party unless the court otherwise directs, but costs against the state, its officers, or its agencies shall be imposed only to the extent permitted by law.

(2)    Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion. Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions (or stipulated reports) and for trials, reasonable and necessary interpreter fees for depositions or trials, and guardian at litem fees; travel expenses are not allowable discretionary costs. . . .

Because the Plaintiff was a prevailing party, he was entitled to recover costs "included in the bill of costs prepared by the clerk." Tenn. R. Civ. P. 54.04(1). The Plaintiff requested

---

[8] The Defendants have cited decisions from other jurisdictions in which the American Rule precluded the award of attorney's fees where public officials have brought an action in their "official capacities." See Cotten v. Fooks, 55 S.W.3d 290 (Ark. 2001); Fischer v. Brombolich, 616 N.E.2d 743 (Ill. App. Ct. 1993).

18

his filing fees as discretionary costs, but the clerk's bill of costs is not otherwise noted in the trial court's order or found in the record on appeal. As a result, the trial court shall, on remand, determine the appropriate amount of costs under Rule 54.04(1).

With regard to discretionary costs, Rule 54.04(2) does not cover the expense incurred for serving subpoenas and does not expressly authorize court reporter expenses incurred at the hearing on the motion for a temporary restraining order. The rule does, however, allow the recovery of "reasonable and necessary court reporter expenses for depositions or trials," but it does not necessarily provide for expenses incurred for pretrial hearings. Tenn. R. Civ. P. 54.04(2) (emphasis added); see also Duran v. Hyundai Motor Am., Inc., 271 S.W.3d 178, 216 (Tenn. Ct. App. 2008). During the hearing on the motion for a restraining order on July 18, 2007, while not a trial on the merits in the traditional sense, the Plaintiff presented conclusive evidence resulting in (1) a finding by the trial court that the Defendants violated the City Charter, and (2) the entry of an order restricting "any further action . . . until there has been compliance with the City Charter."[9] A full and final hearing on that issue could not have resulted in a more favorable or more conclusive determination. Under these circumstances, we believe that the Plaintiff may recover discretionary costs related to this hearing. See Wills & Wills, L.P. v. Gill, 54 S.W.3d 283, 287 (Tenn. Ct. App. 2001) (affirming discretionary costs where the trial court also granted injunctive relief).[10] Accordingly, the case is remanded to the trial court for the entry of an order granting the Plaintiff the costs "included in the bill of costs prepared by clerk" under Rule 54.04(1), as well as discretionary costs of $398.40 under Rule 54.04(2).

## Conclusion

Although the Plaintiff had standing to file this action under the Open Meetings Act and was a prevailing party, he was not entitled to recover attorney's fees. He is, however, entitled to an award of discretionary costs. The judgment is, therefore, affirmed in part and reversed in part, and the cause remanded to the trial court for further proceedings consistent with this opinion. The costs of this appeal are taxed to the Defendants, for which execution may issue if necessary.

---

[9] Interestingly, in their memorandum in response to the Plaintiff's motion for attorney's fees and costs, the Defendants "concede[d] that the court reporting expenses of $398.40 can be properly categorized as discretionary costs." In a later hearing, however, the Defendants argued that the expenses were not recoverable under Rule 54.04(2) because there had been no trial.

[10] See generally J.L. Jones, Annotation, What constitutes "trial," "final trial," or "final hearing" under statute authorizing allowance of attorneys' fees as costs on such proceeding, 100 A.L.R.2d 397 (1965).

_____
GARY R. WADE, JUSTICE