IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 6, 2024 Session

**VANESSA FADDOUL v. EDWARD JAMES BEYER**

**Appeal from the Circuit Court for Williamson County**
**No. 23CV-53, 22CV-591   Joseph A. Woodruff, Judge**
_____

**No. M2024-00413-COA-R3-CV**
_____

Vanessa Faddoul sought an order of protection as a stalking victim pursuant to Tennessee Code Annotated § 36-3-617 against her neighbor, Edward James Beyer, in Williamson County General Sessions Court. After holding an evidentiary hearing, the general sessions court issued a one-year order of protection prohibiting Mr. Beyer from contacting or coming about the victim, Mrs. Faddoul, or her family, and restricting Mr. Beyer's second amendment rights. Mr. Beyer appealed to the Williamson County Circuit Court. Upon a pre-trial motion of Mr. Beyer, the circuit court modified the general sessions order by restoring Mr. Beyer's second amendment right to possess firearms. Following three days of hearings on the petition, but before the circuit court could rule on the merits of the de novo appeal, Mr. Beyer filed a "Notice of Voluntary Nonsuit and Dismissal of Appeal" to dismiss his appeal of the general sessions court ruling against him in Case No. 2022OP-176, purportedly pursuant to Tennessee Rule of Civil Procedure Rule 41.01(1). Because Mr. Beyer dismissed his appeal, the circuit court entered an order "affirming" the judgment of the general sessions court, save the second amendment issue, dismissing the appeal, and granting Mrs. Faddoul leave to apply for an award of attorney's fees. Thereafter, Mrs. Faddoul requested attorney's fees in the amount of $168,112.50 under Tennessee Code Annotated § 36-3-617(a)(1), discretionary costs in the amount of $5,248.62 under Tennessee Rule of Civil Procedure 54.04(2), and $2,579.37 in "non-discretionary cost expenses." The circuit court denied her request for attorney's fees and discretionary costs in toto based on several findings. It found that she was not entitled to an award of mandatory attorney's fees under Tennessee Code Annotated § 36-3-617 because, *inter alia*, stalking victims are not entitled to the same "enhanced protections" as domestic abuse victims, that it did not complete the hearing on the petition, which it found to be a prerequisite for fees, and that the amount of attorney's fees requested was unreasonable. The circuit court also declined to award Mrs. Faddoul any discretionary costs. Both parties appeal. Contrary to Mr. Beyer's argument that the circuit court lacked jurisdiction to take any action after he purportedly "nonsuited" his appeal, we find that the circuit court retained jurisdiction and that it did not err in affirming the judgment of the general sessions court and granting Mrs. Faddoul leave to request attorney's fees. Because Mrs. Faddoul,

as a stalking victim, is entitled to the same rights afforded to domestic abuse victims, and as mandated pursuant to Tennessee Code Annotated § 36-3-617(a)(1), we hold that Mrs. Faddoul is entitled to recover the reasonable and necessary attorney's fees she incurred in the general sessions court and the circuit court proceedings. Thus, we reverse the circuit court's decision regarding attorney's fees and remand for the circuit court to award Mrs. Faddoul her reasonable and necessary attorney's fees and expenses incurred in the general sessions court and the circuit court proceedings under Tennessee Code Annotated § 36-3-617(a)(1). We affirm in part and reverse in part the denial of Mrs. Faddoul's request for discretionary costs, finding that some of the court reporters' invoices clearly delineate the discretionary costs that she is entitled to recover pursuant to Tennessee Rule of Civil Procedure 54.04(2). We also conclude that Mrs. Faddoul is entitled to her reasonable and necessary attorney's fees incurred in this appeal under Tennessee Code Annotated § 36-3-617(a)(1).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part and Remanded**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the court, in which ANDY D. BENNETT and JEFFREY USMAN, JJ., joined.

Paul Joseph Krog and Nicholas Tsiouvaras, Brentwood, Tennessee, for the appellant, Vanessa Faddoul.

Sean Ross Aiello, Franklin, Tennessee, for the appellee, Edward James Beyer.

**OPINION**

**FACTS AND PROCEDURAL HISTORY**

This case stems from the stalking and harassment of Vanessa Faddoul ("Mrs. Faddoul") and her family (collectively, "the Faddouls") by their neighbor, Edward James Beyer ("Mr. Beyer").

In 2017, the Faddouls moved into a home down the street from Mr. Beyer and his then wife, Carrisa Beyer ("Mrs. Beyer"). Over the next four years, Mrs. Faddoul and Mrs. Beyer formed a close friendship. Then, in August 2021, Mrs. Beyer filed for divorce from Mr. Beyer. Apparently faulting Mrs. Faddoul for Mrs. Beyer's decision to divorce him, Mr. Beyer began what Mrs. Faddoul describes as "a campaign of verbal abuse, vandalism, and stalking" against her and her family.[1]

---

[1] Mr. Beyer's acts included spray painting the Faddouls' front door, yelling out and texting vulgar comments to the Faddouls, repeatedly driving motorcycles and other vehicles back and forth in front of their home, making throat-cutting and gun-shooting gestures toward the Faddouls' home, and posting

In March 2022, Mrs. Faddoul obtained an ex parte order of protection against Mr. Beyer and concomitantly filed criminal charges against him in Williamson County General Sessions Court for vandalism under $11,000, assault, and stalking. The general sessions court held a hearing on the order of protection matter and criminal charges on July 11, 2022. The following day, the court entered an agreed order providing as follows:

> By agreement, the captioned matter is dismissed with prejudice, with costs taxed to the respondent. All necessary and appropriate measures that could be had by way of an order of protection have been arranged under a retirement in *State v. Beyer*, 22 CR 1908.

> It is so ORDERED

The above-mentioned retirement order provided that the vandalism charge would be retired upon the condition that, inter alia, Mr. Beyer refrain from contacting the Faddouls. On September 9, 2022, Mr. Beyer violated the terms of the no-contact order.[2]

On October 1, 2022, Mrs. Faddoul, acting pro se, filed a petition for an order of protection in Williamson County General Sessions Court. An ex parte order of protection was issued that day. While Mrs. Faddoul's petition was originally scheduled to be heard before the general sessions court on October 13, 2022, upon Mr. Beyer's request, the court extended the ex parte order of protection and continued the order of protection matter to be heard concurrent with the related criminal matter.[3]

Later that month, Mr. Beyer served Mrs. Faddoul with thirty-one interrogatories and sixteen requests for production of documents related to her order of protection. When Mrs. Faddoul failed to respond, Mr. Beyer filed a motion to compel under Tennessee Rule of Civil Procedure 37. In November 2022, Mrs. Faddoul retained counsel and filed a motion

---

disparaging online reviews for Ahimsa Haircare—the haircare company that Mrs. Faddoul owns and operates out of her home—under his own accounts and various pseudonymous accounts.

[2] Approximately one week later, Mr. Beyer was arrested for his violation of the no-contact order. Although Mr. Beyer's bond conditions prohibited him from contacting the Faddouls, he continued to do so and was arrested for a second time in July 2023. In late July, while the Faddouls were driving to an orthodontist appointment, they caught up to Mr. Beyer on a busy road. As both cars turned out of a two-lane roundabout intersection and the Faddouls pulled in front of Mr. Beyer, he sped up and struck the Faddouls' vehicle. Thankfully, no one was injured in this incident, but the Faddouls' vehicle was totaled. After the vehicular assault, Mr. Beyer was arrested a third time. Shortly thereafter, Mr. Beyer moved out of his home.

[3] The hearing in the criminal matter, which was scheduled for December 14, 2022, was continued to January 25, 2023. The hearing was later continued to March 8, 2023.

to quash Mr. Beyer's discovery requests contending that he was not permitted to take discovery in an order of protection case pending in general sessions court.

In December 2022, the general sessions court held a hearing on the parties' competing motions, during which Mr. Beyer orally moved to remove the case to the Williamson County Circuit Court under Tennessee Code Annotated § 16-15-732 and to conduct discovery based on Tennessee Code Annotated § 24-9-102.[4] The court granted Mrs. Faddoul's motion to quash and denied Mr. Beyer's motion to compel, finding that Mrs. Faddoul need not respond to Mr. Beyer's discovery requests. The court denied Mr. Beyer's oral motions, finding that he had failed to meet the requirements of Tennessee Code Annotated § 16-15-732 to remove the case to the circuit court or show that good cause or exceptional circumstances existed to conduct discovery in general sessions under Tennessee Code Annotated § 24-9-102. Mr. Beyer filed a writ of certiorari seeking review of the court's decision, which Mrs. Faddoul opposed and the circuit court denied after a hearing. Mr. Beyer appealed the circuit court's denial of his writ to this court; however, in March 2023, Mr. Beyer voluntarily dismissed his appeal to this court. *See* Case No. M2023-00019-COA-R3-CV.

In January 2023, Mrs. Faddoul issued a notice of hearing setting the underlying petition to be heard on January 19, 2023. Mr. Beyer objected on the basis that the matter was currently on appeal before this court and that, as a respondent in an order of protection proceeding, he had "the absolute right to waive the fifteen (15) day hearing rule and continue the hearing date on the underlying petition until such time as he requests that it be heard." After hearing "extensive oral argument" on January 19, the general sessions court determined that the matter should be set for trial and adjudicated on the merits. The court reassigned the case and set the matter for hearing on February 6, 2023. Mr. Beyer then unsuccessfully motioned to stay the proceedings pending the resolution of his appeal to this court.

At the February 6, 2023 hearing, the general sessions court heard testimony from Mrs. Faddoul and her husband. At the conclusion of testimony, the court determined that Mrs. Faddoul had demonstrated by a preponderance of the evidence that Mr. Beyer had committed conduct that constituted stalking. Specifically, the court found that Mr. Beyer

---

[4] Tennessee Code Annotated § 16-15-732(b) instructs that a defendant who seeks to remove a civil action commenced in general sessions court must file an affidavit in support of the application for removal. The affidavit must state "that the defendant has a substantial defense to the action and/or that the defendant's defense will be of such a complex or expensive nature that the interests of justice require that the defendant not be required to present the defense at the general sessions level." *Id.* It must also state "the grounds of the defense and why the affiant believes it to be sufficiently substantial, complex or expensive to merit the removal of the case." *Id.* Under Tennessee Code Annotated § 24-9-102, the general sessions court may permit discovery to be taken in its discretion "after motion showing both good cause and exceptional circumstances and pursuant to an order describing the extent and conditions of such discovery."

- 4 -

had repeatedly driven past Mrs. Faddoul's home while intentionally pausing, lurking, and revving his engine in a way that presented a threat; called Mrs. Faddoul and her family names; made threats against Mrs. Faddoul's business; and brought his pit bull to the bus stop of Mrs. Faddoul's children after having threatened to attack Mrs. Faddoul with the dog. Following the hearing, the court issued an order of protection for one year with an expiration date of February 6, 2024.

The order of protection prohibited Mr. Beyer from contacting or coming about Mrs. Faddoul or her children, causing intentional damage to Mrs. Faddoul or her children's property, or hurting or threating any animals owned or kept by Mrs. Faddoul or her children. It further required Mr. Beyer to surrender any firearms in his possession.[5]

On February 8, 2023, Mr. Beyer appealed the order of protection to the Williamson County Circuit Court. Almost immediately thereafter, Mr. Beyer re-issued his prior discovery requests. In March 2023, Mrs. Faddoul responded and served Mr. Beyer with interrogatories and requests for production of documents. Mr. Beyer then filed a motion for protective order attempting to limit Mrs. Faddoul's discovery requests to matters after July 12, 2022—the date of the agreed dismissal of the prior petition for order of protection. Mr. Beyer also filed a motion to compel Mrs. Faddoul to fully respond to his previous discovery requests. Mrs. Faddoul responded and filed her own motion to compel. The court held a hearing on the parties' motions and concluded that Mrs. Faddoul could issue reciprocal discovery dating back to July 12, 2022. Thereafter, Mr. Beyer responded to Mrs. Faddoul's interrogatories and requests for production.

After a scheduling conference, the parties agreed to set the matter for a de novo hearing on May 10, 2023. The day before the hearing, Mrs. Faddoul's counsel withdrew, citing personal reasons, and the hearing was reset to June 7, 2023. On June 6, 2023, the day before the rescheduled hearing, Mrs. Faddoul filed an emergency motion to continue due to her new counsel's sudden illness, and the hearing was again reset to July 17, 2023. On July 14, 2023, Mr. Beyer filed a motion to continue based on his arrest. The court granted Mr. Beyer's motion that day, continuing the hearing indefinitely.

In September 2023, Mrs. Faddoul filed a motion for sanctions requesting that the court impose a sanction in the form of a default judgment against Mr. Beyer for allegedly omitting information and providing false information in his responses to her discovery requests. After a hearing, the court denied Mrs. Faddoul's request for sanctions and construed Mrs. Faddoul's motion as a discovery-deficiency letter, ordering Mr. Beyer to supplement his discovery responses.

_____

[5] In November 2023, Mr. Beyer filed a pre-trial motion in the circuit court to reinstate his second amendment rights. In December 2023, the circuit court granted Mr. Beyer's motion, immediately restoring his right to possess a firearm and holding that "[a]ll other provisions of the February 6, 2023 Order shall remain in full force and effect pending final hearing on the de novo appeal."

In November 2023, Mrs. Faddoul filed a motion for summary judgment on her petition for order of protection, arguing that the undisputed facts demonstrated that Mr. Beyer had engaged in stalking within the meaning of Tennessee Code Annotated § 39-17-315, entitling her to an order of protection under Tennessee Code Annotated § 36-3-605(b). Mr. Beyer filed a motion to partially strike Mrs. Faddoul's motion for summary judgment under Tennessee Rule of Civil Procedure 12.06, which he later struck and refiled as a "Motion to Partially Strike Motion for Summary Judgment and Determine Submission of Affidavits in Bad Faith." During a hearing on November 30, 2023, Mrs. Faddoul orally stated her intention to strike her motion for summary judgment and proceed to a bench trial on the merits, rendering Mr. Beyer's motion moot. The court then set the matter for a one-day trial on the merits on January 8, 2024.

On January 8, 2024, the circuit court heard testimony from Mrs. Faddoul and Williamson County Sheriff's Department detective Christopher Shoap. The court also viewed video recordings introduced by Mrs. Faddoul, which purportedly documented some of the harassing acts delineated in her petition. At the close of testimony, the court remarked that these video recordings "did not have a great deal of probative value." Yet the court found that Mrs. Faddoul had met her burden of coming forward with evidence of cyber harassment, particularly "the social media posts and some of the emails which were sent in Mr. Beyer's own email or accounts with respect to where there's no dispute about his ownership." The court further remarked that "at least for the time at this stage, obviously pending hearing testimony from the respondent, if things stop right now, the -- I think the petitioner has shown her entitlement to an OP that would be at least as robust and restrictive on the respondent as his current bond conditions."

Because there was still a dispute regarding the ownership of two of the pseudonymous email accounts used to harass Mrs. Faddoul, the court reset the hearing to January 18, 2024, to hear live testimony from the sheriff department's electronic forensic expert Lee Eaves ("Detective Eaves")[6] regarding whether there was forensic evidence linking Mr. Beyer to these accounts.

On January 18, 2024, the court heard testimony from Detective Eaves, but due to inclement weather, the proceedings were cut short before Detective Eaves could be cross-

---

[6] Detective Eaves was not present for the January 8, 2024 hearing as he was out of state. Although he had previously been deposed and Mrs. Faddoul was prepared to introduce his video deposition testimony, Mr. Beyer claimed that Mrs. Faddoul had not made a good faith effort to secure his presence for testimony at the hearing. Mr. Beyer thus claimed that Detective Eaves was not "unavailable" as that term is defined in Tennessee Rule of Evidence 804(5). The court gave the parties a choice to either declare Detective Eaves unavailable without objection or reset the hearing until such a time as he was available. Mr. Beyer chose the latter.

examined. The hearing was continued to February 12, 2024. Notably, this was beyond the term of expiration of the order of protection.

In the interim, on January 24, 2024, Mr. Beyer filed a notice of voluntary nonsuit pursuant to Tennessee Rule of Civil Procedure Rule 41.01. Mrs. Faddoul objected, contending that Mr. Beyer was not entitled to "nonsuit" his appeal as if he were a plaintiff but that his dismissal entitled her to an affirmance of the general sessions order as well as to "costs fees, and expenses." Mr. Beyer countered that, upon the filing of his "nonsuit," the circuit court "lost jurisdiction to take further action in this case beyond entering the administrative order of dismissal which operates to affirm the February 6, 2023 final judgment."

On January 26, 2024, the circuit court held a telephonic conference. Later that day, the court entered an administrative order of dismissal. The dismissal order held in its entirety as follows:

> This appeal from an order of protection entered by the General Sessions Court on February 6, 2023, is before this Circuit Court Upon the *Notice of Voluntary Nonsuit and Dismissal of Appeal* filed by Respondent on January 24, 2024 as well as upon the *Objection to Proposed Order of Nonsuit* filed by Petitioner on January 24, 2024. The Court held a telephonic conference with counsel on Friday, January 26, 2024. Based upon the arguments of counsel and the entire record, the Court ORDERS as follows:
>
> 1. Respondent's appeal is hereby DISMISSED.
>
> 2. The judgment of the General Sessions Court entered February 6, 2023 is hereby AFFIRMED.
>
> 3. Petitioner is hereby granted leave to file and serve an application for an award of her reasonable attorneys' fees, together with supporting affidavits, declarations, and other written evidence, not later than the close of business Friday, February 2, 2024.
>
> 4. In the event Petitioner files such an application, Respondent shall have leave to file and serve his written opposition not later than the close of business Friday, February 16, 2024.
>
> It is so ORDERED.

Following the entry of the dismissal order, Mr. Beyer filed a motion to alter or amend. Mr. Beyer argued that the filing of his "nonsuit" deprived the circuit court of jurisdiction to take further action in this case "beyond entering the administrative order of

dismissal which operates to remand the proceeding to General Sessions Court." Thus, he claimed that the "the additional orders issuing an affirmation of the February 6, 2023 order and granting leave to Mrs. Faddoul to submit an application for fees exceeded the Court's jurisdictional authority."

On February 2, 2024, Mrs. Faddoul filed her motion for attorney's fees and discretionary costs, requesting $168,112.50 in attorney's fees under Tennessee Code Annotated § 36-3-617, $5,248.62 in discretionary costs pursuant to Tennessee Rule of Civil Procedure 54.04(2) and $2,579.37 in "non-discretionary-cost expenses." Mr. Beyer opposed Mrs. Faddoul's application, claiming that she was not entitled to an award of any attorney's fees or discretionary costs for the reasons stated in his motion to alter or amend.

The circuit court ruled on Mrs. Faddoul's motion for attorney's fees and costs in a 13-page memorandum and final order entered March 8, 2024. To begin, the court found that it retained jurisdiction to rule on Mrs. Faddoul's application for attorney's fees because the issue had been raised and discussed during the telephonic conference of counsel held on January 26, 2024 before the entry of the order of dismissal.

Although the circuit court found that the issue of Mrs. Faddoul's attorney's fees was properly before it, it ruled that she was not entitled to a "mandatory" award of fees under the fee shifting provision of Tennessee's Domestic Abuse Act, Tennessee Code Annotated § 36-3-617(a)(1), for two principal reasons. First, the circuit court noted that payment of attorney's fees under § 36-3-617(a)(1) becomes mandatory when "the Court either (1) issues or (2) extends an order of protection *after the hearing on the petition.*" (Emphasis in original). And as the circuit court reasoned, because it did not complete its hearing on Mr. Beyer's petition and it did not "issue or extend the order of protection, it merely reinstated the judgment of the General Sessions Court," the mandatory fee provision did not apply.

Second, the circuit court reasoned that "stalking victims" are not entitled to the same enhanced protection as "domestic abuse victims." Distinguishing the facts of the case at bar from those in *New v. Dumitrache*, 604 S.W.3d 1 (Tenn. 2020), the trial court reasoned:

> In the present case, the parties are neighbors, while in *New,* the parties were ex-spouses. The trial court in *New* dismissed the case at the Rule 12 stage, while the case at bar was dismissed pursuant to Tenn. R. Civ. P. 41.01. Finally, and perhaps most telling, the ex-wife in *New* was a victim of domestic violence entitled to the "enhanced protection" of Tenn. Code Ann. § 36-6-6l7(a)(1). However, in this case, Ms. Faddoul is not a domestic abuse victim entitled to the same "enhanced protection."

For these two principal reasons, the circuit court declined to award Mrs. Faddoul any attorney's fees under Tennessee Code Annotated § 36-3-617(a)(1). Ruling in the alternative, the court found that "even if awarding fees were mandatory" under § 36-3-

617(a)(1), the amount of fees included in Mrs. Faddoul's request was unreasonable under the factors set forth in Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.5.

Turning to Mrs. Faddoul's request for discretionary costs, the circuit court found that Mrs. Faddoul had sought costs outside of the scope of Tennessee Rule of Civil Procedure 54.04(2). Although she requested reimbursement for court reporter expenses, which may be awarded under Rule 54.04(2), the court concluded that the equities of this case did not justify an award of discretionary costs in her favor because "neither party is a prevailing party in this case" and Mrs. Faddoul "[did] not sufficiently explain[] the purpose of the court reporter fees she includes and the Court cannot determine from the information provided whether those services were both reasonable and necessary." The court also declined to award Mrs. Faddoul a judgment for additional costs, noting that, "In his written response, Mr. Beyer avers he has paid the costs included in the bill of costs prepared by the clerk pursuant to Rule 54.04(1)."

This appeal followed.

## ISSUES

Mrs. Faddoul raises five issues on appeal, which we consolidate and rephrase as follows:

1. Whether Mrs. Faddoul was entitled to an award of mandatory attorney's fees under Tennessee Code Annotated § 36-3-617(a)(1).[7]

2. Whether Mrs. Faddoul was entitled to discretionary costs for court reporter expenses under Rule 54.04(2).

3. Whether Mrs. Faddoul is entitled to award of her attorney's fees on appeal.

For his part, Mr. Beyer contends that the circuit court erred by affirming the judgment of the general sessions court because, inter alia, it lacked subject matter

---

[7] Three of the issues that Mrs. Faddoul raises on appeal relate to this subject. They read as follows:

1. Tennessee Code Section 36-3-617(a)(1) provides that a stalking victim is not to bear any costs, including attorney's fees, associated with obtaining, enforcing, or defending an order of protection. [Mrs. Faddoul] obtained an order of protection from the General Sessions Court; Mr. Beyer appealed, and the Circuit Court affirmed under Tennessee Code Section 27-5-107, though only after [Mrs. Faddoul] incurred legal expenses. Did the trial court err by refusing to award [Mrs. Faddoul] any attorney's fees or expenses despite the statutory mandate?
2. [Mrs. Faddoul] successfully obtained the Order of Protection and defended it on appeal. In furtherance thereof, [Mrs. Faddoul] incurred substantial legal fees, largely

jurisdiction to do so once he took a voluntary "nonsuit" of his appeal pursuant to Tennessee Rule of Civil Procedure 41.01(1).[8]

## STANDARD OF REVIEW

Our interpretation of questions of law, including those of statutory construction, is de novo without any presumption of correctness. *Manor v. Woodroof*, No. M2020-00585-COA-R3-CV, 2021 WL 527477, at *3 (Tenn. Ct. App. Feb. 12, 2021) (citing *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000)). As the Tennessee Supreme Court has explained:

> When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. When a statute is clear, we apply the plain meaning without complicating the task. Our obligation is simply to enforce the written language. It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. Further, the language of a statute cannot be considered in a vacuum, but should be construed, if practicable, so that its component parts are consistent and reasonable. Any interpretation of the statute that would render one section of the act repugnant to another should be avoided. We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed.

*In re Est. of Tanner*, 295 S.W.3d 610, 613–14 (Tenn. 2009) (internal citations omitted).

---

necessitated by Mr. Beyer's conduct. Did the Trial Court abuse its discretion in ruling, alternatively, that [Mrs. Faddoul] would not be entitled to any attorney's fees (rather than merely some lesser amount of fees) because her requests were unreasonable?

3. Midway through the final hearing before the Trial Court, Mr. Beyer dismissed his appeal, resulting in the affirmance of the Order of Protection. Did the Trial Court err in determining that [Mrs. Faddoul] was not the prevailing party?

[8] In the argument section of his brief corresponding to this issue, Mr. Beyer contends that he was improperly denied access to discovery in the general sessions court. Mrs. Faddoul effectively argues that Mr. Beyer has waived review of this issue because "the propriety of the General Sessions Court's discovery rulings is a separate issue from the propriety of the Trial Court's affirmance of the Order of Protection." We agree. An argument which does not fall within the scope of the issues presented on appeal may be considered waived. *Trezevant v. Trezevant*, 696 S.W.3d 527, 531 (Tenn. 2024). Because this argument falls outside of the scope of the sole issue Mr. Beyer raises on appeal, we find that it has been waived. We also find that Mr. Beyer waived this issue by voluntarily dismissing his appeal of the general sessions court judgment.

Decisions as to the reasonableness of a request for attorney's fees and the propriety of an award for discretionary costs are reviewed under an abuse of discretion standard. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 35 (Tenn. Ct. App. 2002). The abuse of discretion standard does not allow an appellate court to substitute its judgment for that of the trial court. *Wright ex rel. Wright*, 337 S.W.3d at 176. Nevertheless, discretionary decisions require "a conscientious judgment, consistent with the facts, that takes into account the applicable law." *White v. Beeks*, 469 S.W.3d 517, 527 (Tenn. 2015) (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

In *Lee Medical*, the Tennessee Supreme Court provided a framework for determining whether a trial court properly exercised its discretion:

> [R]eviewing courts should review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions.

312 S.W.3d at 524–25 (citations omitted).

When "[a]pplying this framework, we look first at whether the factual basis for the trial court's decision is supported by evidence in the record." *Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 306 (Tenn. 2020) (citing *Lee Med., Inc.*, 312 S.W.3d at 524). We "review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d)." *Lee Med., Inc.*, 312 S.W.3d at 525 (citations omitted). We then look at whether the trial court identified and applied the correct legal principles relevant to its decision. *See Harmon*, 594 S.W.3d at 306 ) (citing *Lee Med., Inc.*, 312 S.W.3d at 524). Our review of the trial court's legal determinations is "de novo without any presumption of correctness." *Lee Med., Inc.*, 312 S.W.3d at 525 (citations omitted).

The "prevailing party" inquiry for purposes of an award of attorney's fees is necessarily fact intensive. *Fannon v. City of LaFollette*, 329 S.W.3d 418, 432 (Tenn. 2010). We accord the trial court's factual findings a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d).

## ANALYSIS

### I. JURISDICTIONAL ISSUES

Because he was the only party to perfect an appeal, Mr. Beyer contends that the filing of his purported Rule 41 voluntary "nonsuit" deprived the circuit court of jurisdiction to take any further action in this case other than entering the order of dismissal. He also contends that the dismissal of his appeal "operate[d] to remand the proceeding to general sessions court." Accordingly, he argues that the circuit court erred in affirming the order of protection and granting Mrs. Faddoul leave to submit a request for attorney's fees.

For her part, Mrs. Faddoul contends that Mr. Beyer was not entitled to "nonsuit" his appeal pursuant to Tennessee Rule of Civil Procedure 41.01(1) as if he were a plaintiff; thus, "any argument centering around the effect of Rule 41 [is] meritless." Mrs. Faddoul states that the circuit court properly affirmed the judgment of the general sessions court because Tennessee Code Annotated § 27-5-107 requires affirmance when an appellee dismisses an appeal of a general sessions judgment "for any cause." She also refutes Mr. Beyer's contention that this case should have been remanded back to general sessions after he filed his notice of dismissal, noting that "[t]he possibility of a remand to general sessions [was] expressly withdrawn from Tennessee jurisprudence" in *Ken Smith Auto Parts v. Thomas*, 599 S.W.3d 555 (Tenn. 2020).

A.  Rule 41 Voluntary Nonsuit

Because the Rule 41 "nonsuit" issue implicates the circuit court's jurisdiction, we view it as a threshold inquiry:

> "Subject matter jurisdiction provides the court with the authority to act." *In re Marquise T.G.*, No. M2011-00809-COA-R3-JV, 2012 WL 1825766, at *4 (Tenn. Ct. App. May 18, 2012) (internal citations omitted). "Challenges to a court's subject matter jurisdiction call into question the court's lawful authority to adjudicate a controversy brought before it, and, therefore, should be viewed as a threshold inquiry." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 445 (Tenn. 2012) (internal citations and quotation marks omitted). "Whether a court has subject matter jurisdiction is a question of law for which this court conducts a de novo review, with no presumption of correctness." *Id.* "Where subject matter jurisdiction is challenged, the party asserting that subject matter jurisdiction exists . . . has the burden of proof." *Johnson v. Hopkins*, 432 S.W.3d 840, 844 (Tenn. 2013) (citing *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712 (Tenn. 2012)).

*Chimneyhill Condo. Ass'n v. Chow*, No. W2020-00873-COA-R3-CV, 2021 WL 3047166, at *8 (Tenn. Ct. App. July 20, 2021).

We begin by noting that only a "plaintiff" may take a nonsuit or voluntary dismissal under Tennessee Rule of Civil Procedure Rule 41.01(1). *See* Tenn. R. Civ. P. 41.01(1) ("[T]he **plaintiff** shall have the right to take a voluntary nonsuit to dismiss an action

- 12 -

without prejudice by filing a written notice of dismissal at any time before the trial of a cause[.]") (emphasis added). "Plaintiff" is defined as "[t]he party who brings a civil suit in a court of law." *Plaintiff, Black's Law Dictionary* (12th ed. 2024). In the case before us, Mrs. Faddoul initiated the action in the general sessions court. Mr. Beyer did not. Moreover, Mr. Beyer did not become a plaintiff by filing an appeal to the circuit court. *See Crowley v. Thomas*, 343 S.W.3d 32, 34 (Tenn. 2011) ("A defendant's appeal to the circuit court is simply a continuation of the defendant's opposition to the plaintiff's civil warrant initiated in the general sessions court.").

Thus, a Rule 41 voluntary nonsuit was not available to Mr. Beyer. Because Mr. Beyer was not entitled to take a Rule 41 nonsuit, we agree with Mrs. Faddoul that his jurisdictional argument regarding the effect of a Rule 41 nonsuit on this action is without merit.[9]

### B. Dismissal of Appeal from General Sessions Court

We now address the right of a party to appeal a general sessions court judgment and the legal effect of the voluntary dismissal of the appeal by Mr. Beyer. "Appeals from general sessions courts are governed by statute . . . and by the Tennessee Rules of Civil Procedure." *Crowley*, 343 S.W.3d at 34 (citing Tenn. Code Ann. §§ 27-5-101 to -108 (2000 & Supp. 2010); Tenn. R. Civ. P. 1 (2)).

Any party may file an appeal to circuit court within ten days from the entry of a judgment in general sessions court. *Ken Smith Auto Parts v. Thomas*, 599 S.W.3d 555, 560 (Tenn. 2020) (citing Tenn. Code Ann. § 27-5-108(a)(1)). "Sections 27-5-106 and -107 outline the actions to be taken by the circuit court if an appellant from general sessions court fails to appear in the circuit court for trial" or "**if the appeal is dismissed for any cause**."[10] *Id*. at 560 (emphasis added). As we discuss in more detail below, when a defendant such as Mr. Beyer dismisses his appeal of a general sessions court judgment **for any cause**, the circuit court must affirm the judgment of the general sessions court. *See Crowley*, 343 S.W.3d at 34. Moreover, and contrary to Mr. Beyer's remand argument, "**the**

---

[9] We also note that a Rule 41 nonsuit must be filed by a plaintiff "before the trial of a cause." S*ee* Tenn. R. Civ. P. 41.01(1) ("[T]he **plaintiff** shall have the right to take a voluntary nonsuit to dismiss an action without prejudice by filing a written notice of dismissal at any time **before the trial of a cause**[.]") (emphasis added). Mr. Beyer's notice of dismissal was not filed "before" the commencement of the trial, meaning the commencement of the de novo hearing in the circuit court, which began on January 8, 2024. Mr. Beyer filed his notice on January 24, 2024, which was after the second day of trial.

[10] "Sections 27-5-106 and -107 both date back to Tennessee's first official code, the Code of 1858. The provisions in the original code remain largely unchanged today." *Ken Smith Auto Parts*, 599 S.W.3d at 561.

**case is not remanded to the general sessions court; the judgment entered is the circuit court's own . . . judgment."** *Ken Smith Auto Parts*, 599 S.W.3d at 565 (emphasis added).

In the *Ken Smith Auto Parts* case, the Supreme Court concluded that neither § 27-5-106 nor -107 contemplates remand to the general sessions court as an option following the dismissal of an appeal to the circuit court. To the contrary,

> given the de novo nature of the appeal from general sessions court to circuit court, "affirmance" of the general sessions judgment does not result in issuance of a mandate to the general sessions court, as would affirmance of a circuit court judgment by the Court of Appeals. As referenced in section 27-5-107, "affirmance" necessarily means the entry of a circuit court judgment *in the amount* of the general sessions judgment. *See Nguyen v. Watson*, No. E2008-02690-COA-R3-CV, 2009 WL 1812428, at *3 (Tenn. Ct. App. June 25, 2009) (holding there was "no real difference" between a circuit court's affirmance of the general sessions judgment "and the legislature's directive [in section 27-5-106(a)] that 'the plaintiff shall have judgment final, by default.'"). **The case is not remanded to the general sessions court; the judgment entered is the circuit court's own default judgment.**
>
> This interpretation harmonizes section 27-5-107 with the express language in section 27-5-106(a), is congruent with the de novo nature of the appeal from general sessions court to circuit court, and is consistent with this Court's prior interpretations. *See C.B. Donaghy & Co.*, 98 S.W. at 1051 ("Upon dismissal of an appeal from the judgment of the justice of the peace, it is the duty of the circuit court to affirm the judgment of the justice. Shannon's Code, § 4876 [predecessor to section 27-5-107]."); *Anderson*, 63 Tenn. at 18 ("By sec. 3145 of the Code [predecessor to section 27-5-107], where . . . the appeal is, for any cause, dismissed, the appellee is entitled to an affirmance of the judgment below.").
>
> Neither section 27-5-106 nor section 27-5-107 includes dismissal of the appeal and remand to the general sessions court as an option in the event the defendant/appellant fails to appear and prosecute an appeal from the general sessions court. **Neither includes a mechanism by which the circuit court remands the matter back to general sessions court once the defendant/appellant perfects his or her appeal**.

*Id.* at 565–66 (alterations in original) (emphasis added).

The foregoing notwithstanding, Mr. Beyer contends that affirmance of the underlying judgment was not mandatory because his dismissal was voluntary and not "for

- 14 -

cause." We find no merit to this argument because, contrary to his contention, **§ 27-5-107 requires affirmance upon a dismissal "for *any* cause**." *Id*. at 565 (emphasis added). Read in the context of § 27-5-107, the word "any" denotes that affirmance is required *whenever* an appellant dismisses their appeal of a general sessions' judgment, irrespective of the reason for dismissal. *See Lee Med., Inc.*, 312 S.W.3d at 527 (finding that in construing statutory text, courts must give words their natural and ordinary meaning "in the context in which they appear in the statute and in light of the statute's general purpose") (citations omitted).

Further, as our Supreme Court explained, the language of § 27-5-107 is mandatory. *See Crowley*, 343 S.W.3d at 34. Accordingly, when a defendant such as Mr. Beyer dismisses his appeal of a general sessions court's judgment for *any* cause, the circuit court must affirm the judgment of the general sessions court. *Id.* And "[a]s referenced in section 27-5-107, **'affirmance' necessarily means the entry of a circuit court judgment[.]**" *Ken Smith Auto Parts*, 599 S.W.3d at 565 (emphasis added). Thus, as the Supreme Court made clear, **"the case is not remanded to the general sessions court; the judgment entered is the circuit court's own . . . judgment."** *Id*. (emphasis added).

Based on the foregoing, we conclude that the circuit court was not divested of its jurisdiction upon the filing of Mr. Beyer's notice of dismissal and that the circuit court did not err in affirming the February 6, 2023 judgment of the general sessions court and granting Mrs. Faddoul leave to submit a request for attorney's fees.

## II. ATTORNEY'S FEES

The circuit court denied Mrs. Faddoul's application for attorney's fees on multiple grounds. We will discuss each in turn.

### A. Stalking Victim Protections

In its order on Mrs. Faddoul's request for attorney's fees and costs, the circuit court found that Mrs. Faddoul, as a stalking victim, was not entitled to the same "enhanced protection" afforded to domestic abuse victims under Tennessee Code Annotated § 36-3-617.[11] Mrs. Faddoul contends that a stalking victim is entitled to the same protection and

---

[11] As noted previously, the circuit court's order reads in pertinent part:

However, the facts in [*New v. Dumitrache*, 604 S.W.3d 1 (Tenn. 2020)] are readily distinguishable from the case at bar. In the present case, the parties are neighbors, while in *New*, the parties were ex-spouses. The trial court in *New* dismissed the case at the Rule 12 stage, while the case at bar was dismissed pursuant to Tenn. R. Civ. P. 41.01. Finally, and **perhaps most telling, the ex-wife in *New* was a victim of domestic violence entitled to the "enhanced protection" of Tenn. Code Ann. 36-6-617(a)(1). However, in this case, Ms. Faddoul is not a domestic abuse victim entitled to the same "enhanced**

- 15 -

relief as a domestic abuse victim; therefore, the circuit court erred in determining that she was not entitled to an award of mandatory attorney's fees under Tennessee Code Annotated § 36-3-617(a)(1).

When Tennessee's Domestic Abuse Act was first enacted,[12] the stated purpose was "to recognize the seriousness of **domestic abuse** as a crime and to assure that the law provides a victim of domestic abuse with enhanced protection from domestic abuse." Tenn. Code Ann. § 36-3-618 (emphasis added).

However, and significantly, the statutory scheme concerning orders of protection was amended in 2005 to afford "stalking victims" the same protection as domestic violence victims.[13] *See* 2005 Tennessee Laws Pub. Ch. 381 (S.B. 645)). In pertinent part, Tennessee Code Annotated § 36-3-602(a) was amended to provide:

> Any domestic abuse victim, **stalking victim** or sexual assault victim who has been subject to, threatened with, or placed in fear of, domestic abuse, **stalking**, or sexual assault, may seek relief under this part by filing a sworn petition alleging domestic abuse, stalking, or sexual assault by the respondent.

(Emphasis added).

The statutory scheme for orders of protection was also amended to afford stalking victims the same financial relief as domestic abuse victims and sexual assault victims. *See* Tenn. Code Ann. § 36-3-617(a)(1). Tennessee Code Annotated § 36-3-617(a)(1) currently provides, in relevant part:

> Notwithstanding any other law to the contrary, no domestic abuse victim, **stalking victim** or sexual assault victim, or victim of a felony offense under title 39, chapter 13, part 1, 2, 3, or 5 shall be required to bear the costs . . . associated with the filing, issuance, registration, service, dismissal or

---

**protection." Accordingly,** *New* **is inapplicable to this case, and Ms. Faddoul is not entitled to mandatory attorney fees under Tenn. Code Ann. 36-6-617(a)(1).**

(Emphasis added).

[12] Tennessee's Domestic Abuse Act, codified at Tennessee Code Annotated § 36-3-601, et seq., was enacted in 1979 "in an effort to curb domestic abuse." *State v. Gray*, 46 S.W.3d 749, 750 (Tenn. Ct. App. 2000).

[13] Tennessee Code Annotated § 36-3-601(12) provides that "'Stalking victim' means any person, regardless of the relationship with the perpetrator, who has been subjected to, threated with, or placed in fear of the offense of stalking, as defined in § 39-17-315[.]'"

nonsuit, appeal or enforcement of an . . . order of protection[.] If the court, after the hearing on the petition, issues or extends an order of protection, all . . . attorney fees shall be assessed against the respondent.

(Emphasis added). "This statute clearly indicates that no victim shall be required to pay the costs, leaving courts 'little maneuvering room.'" *Purifoy v. Mafa*, 556 S.W.3d 170, 203 (Tenn. Ct. App. 2017) (citing *Merriman v. Merriman*, No. E2010-00013-COA-R3-CV, 2010 WL 3767116, at *2 (Tenn. Ct. App. Sept. 28, 2010)).

We acknowledge that the circuit court found that Mrs. Faddoul, as a stalking victim, was not entitled to the same "enhanced protection" afforded to domestic abuse victims under Tennessee Code Annotated § 36-3-617(a)(1). We, however, respectfully disagree with that conclusion. As mentioned above, Tennessee Code Annotated § 36-3-617(a)(1) mandates that "no domestic abuse victim, **stalking victim** or sexual assault victim, or victim of a felony offense under title 39, chapter 13, part 1, 2, 3, or 5 shall be required to bear the costs . . . associated with the successful filing, issuance, . . . appeal or enforcement of an . . . order of protection[.]" (Emphasis added). Thus, § 36-3-617(a)(1) is clear: *all* listed victims are equally insulated from the cost of obtaining, defending, or enforcing orders of protection. *See In re Est. of Tanner*, S.W.3d at 613 ("When a statute is clear, we apply the plain meaning without complicating the task."). There is nothing in the plain language of § 36-3-617(a)(1) to indicate that domestic abuse victims should receive "enhanced protection" while the other categories of victims listed therein, such as stalking victims, should not.

As our Supreme Court elucidated in *New v. Dumitrache*: "By enacting sections 36-3-617 and -618, the General Assembly made clear that victims of domestic violence are not to be burdened with the costs of obtaining or defending orders of protection necessary to ensure their protection." 604 S.W.3d 1, 23 (Tenn. 2020). And as the 2005 amendments make clear, stalking victims are entitled to the same protection and relief as domestic abuse victims. Thus, Mrs. Faddoul was entitled to the same "enhanced protection" and relief as a domestic abuse victim.

### B. The Requirement of a Hearing and Order

Tennessee Code Annotated § 36-3-617(a)(1) states, in part, that all court costs, filing fees, litigation taxes and attorney's fees shall be assessed against the respondent if "the court, after the hearing on the petition, issues or extends an order of protection." The circuit court ruled that Mrs. Faddoul was not entitled to recover any of her attorney's fees because the circuit court did not complete its hearing on the appeal, and it did not issue or extend the order of protection.[14] We respectfully disagree with the court's reasoning.

---

[14] The order reads in pertinent part:

It is undisputed that a hearing was conducted and completed in the general sessions court and, after that hearing, an order of protection was issued. Mr. Beyer appealed the general sessions judgment, but he dismissed his appeal before a hearing could be completed in the circuit court. Consequently, the circuit court entered a judgment affirming the issuance of the order of protection by the general sessions court. Thus, the order of protection at issue in this case was entered after a hearing, and that order was affirmed upon the dismissal of Mr. Beyer's appeal.

What occurred in the general sessions court was not nullified by Mr. Beyer's appeal because he dismissed his appeal before a decision on the merits. The fact that a hearing was not completed in the circuit court or that an additional order of protection was not issued or extended after a hearing in the circuit court is of no consequence.

We also find the Supreme Court's analysis of the procedural history of the *New v. Dumitrache* case instructive. In that case, the father failed to timely appeal the general sessions court judgment; nevertheless, he employed a collateral attack by filing a petition and writ of error. As the *New* court discussed and explained,

Father's Petition and Writ of Error presents circumstances distinct from the foregoing authorities. It was not a typical, timely appeal from a general sessions court's order of protection. However, all issues raised in Father's Petition and Writ of Error ultimately related to the general sessions court's order of protection. Here, Father filed a single document that included two separate requests which would have superseded the general sessions court's order of protection prohibiting Father's contact with the minor child had they been granted. Indeed, in his pleading, Father repeatedly asked the chancery court to review the transcript of the general sessions court hearing and determine whether the order of protection had been appropriately issued. Father also asked the chancery court to enforce the parenting plan in the Texas decree, which again would have superseded the order of protection had the request been granted. Finally, in a separate, subsequent motion, Father requested interim parenting time with the minor child, and this

The second provision [of Tennessee Code Annotated § 36-3-617] discusses when the payment of attorney's fees becomes mandatory. This occurs when the Court either (1) issues or (2) extends an order of protection after the hearing on the petition. In this case, the Court did not conclude the hearing. The Court held the initial hearing on the afternoon of January 8, 2024. Because the parties did not finish, the hearing was reset to January 18, 2024. Due to inclement weather, the case was reset again to February 12, 2024. However, prior to the hearing, Mr. Beyer nonsuited his appeal. Because of Mr. Beyer's nonsuit, the Court did not complete the hearing on the petition. Because it did not complete the hearing, the Court did not issue or extend the order of protection, it merely reinstated the judgment of the General Sessions Court.

- 18 -

request, too, had it been granted, would have superseded the general sessions court's order of protection. Father's pleadings and requests were, as Mother contends, all efforts to convince the chancery court to grant him relief that would have effectively set aside the general sessions court's order of protection.

We agree with the chancery court that in the circumstances of this case section 36-3-617(a)(1) authorizes awarding Mother attorney's fees incurred defending against Father's pleadings in their entirety. We note that the chancery court asked Mother's attorney whether she could apportion her work between Father's requests, and she explained why she could not. Having carefully reviewed the record, it is clear why the chancery court accepted counsel's explanation. To deny Mother an award of all her attorney's fees for defending against Father's pleading would frustrate legislative intent. By enacting sections 36-3-617 and -618, the General Assembly made clear that victims of domestic violence are not to be burdened with the costs of obtaining or defending orders of protection necessary to ensure their protection. As already noted, this Court's prime directive when interpreting statutes is to effectuate legislative intent and reasonably construe statutes in a manner that is consistent with the language used and that provides for a harmonious operation of the laws. *Kite*, 22 S.W.3d at 805 (citations omitted). "We [must] presume that the legislature did not intend an absurdity." *Id*. We would frustrate legislative intent and construct an inharmonious, illogical, and absurd reading of section 36-3-617(a)(1) by holding, as Father contends, that a party against whom an order of protection has been entered may avoid responsibility for attorney's fees by failing to appeal timely and by instead filing a pleading that attacks and seeks review of the order of protection by obsolete and defective legal means. The record in this appeal illustrates clearly that Father's chosen means of attacking the general sessions court's order of protection actually gave rise to more legal uncertainty, which, in turn, required more legal work and resulted in more legal fees for Mother than would have been necessitated had Father timely appealed the order of protection in the manner permitted by statute. We find it illogical and inconsistent with the declared legislative intent to interpret the statute in a manner that would impose on Mother the legal costs of Father's litigation choices when his clear purpose in filing the Petition and Writ of Error was to overturn the general session court's order of protection. *See Kite*, 22 S.W.3d at 805–06 (declining to interpret the statute in a manner that would have penalized domestic abuse victims for the trial court's failure to set a hearing within the ten days prescribed by statute). Accordingly, we conclude that the chancery court properly awarded Mother's attorney's fees pursuant to Tennessee Code Annotated sections 36-3-617 and 36-3-618.

*New v. Dumitrache*, 604 S.W.3d at 22–23 (footnote omitted).

A respondent like Mr. Beyer should not be permitted to avoid the fee shifting mechanism in § 36-3-617 by appealing an order of protection against him, causing the victim to accrue further costs, and then dismissing the appeal in the final hour before the circuit court has a chance to complete the de novo hearing. To do so would pervert the interests of justice, "frustrate legislative intent[,] and construct an inharmonious, illogical, and absurd reading of section 36-3-617(a)(1)." *Id.* at 23.

In the case at bar, and similarly in *New*, the general sessions court held a hearing on the petition for order of protection after which the court issued an order of protection against Mr. Beyer. Mr. Beyer appealed, but before the circuit court could complete the de novo hearing, Mr. Beyer dismissed his appeal. Following the dismissal, the circuit court correctly affirmed the judgment of the general sessions court. Based on these facts, Mrs. Faddoul contends her reasonable and necessary attorney's fees must be taxed against Mr. Beyer as mandated by Tennessee Code Annotated § 36-3-617. We agree. We note, however, that an award of mandatory attorney's fees under § 36-3-617(a)(1) must be limited to the fees incurred that were reasonable and necessary.

## C. Reasonableness of Attorney's Fees

Mrs. Faddoul next argues that her requested attorney's fees were reasonable and necessary and that the circuit court abused its discretion by refusing to award her any of her requested attorney's fees.

After assessing her request for attorney's fees pursuant to Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.5(a), the circuit court declined to award Mrs. Faddoul any attorney's fees, explaining,

> Even if awarding fees were mandatory, the Court would not find the amount of fees being sought is reasonable under the circumstances and in light of the factors of RPC 1.5(a). The activity by her lawyers detailed in the billing records was largely unnecessary, disproportionate to the issues involved, and not justified by the foreseeable results. Mr. Beyer's request for a further hearing to determine the reasonableness of the attorney fees and discretionary costs is therefore mooted.

In cases such as this where an award of attorney's fees is mandatory, "the trial court has no discretion regarding whether to award attorney's fees; however, the court has discretion to determine whether the amount of the attorney's fee requested is reasonable." *Metro. Gov't of Nashville v. Brown*, No. M2008-02495-COA-R3-CV, 2009 WL 5178418,

at *8 (Tenn. Ct. App. Dec. 30, 2009) (citing *Airline Constr. Inc. v. Barr*, 807 S.W.2d 247, 270 (Tenn. Ct. App. 1990)).

In determining the reasonableness of a request for attorney's fees, Tennessee courts are to consider the non-exhaustive list of factors in Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.5(a):

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
>
> (8) whether the fee is fixed or contingent;
>
> (9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
>
> (10)  whether the fee agreement is in writing.

Ultimately, the reasonableness of an attorney's fee request must depend upon the particular circumstances of the individual case, as considered in light of the relevant guidelines. *White v. McBride*, 937 S.W.2d 796, 800 (Tenn. 1996) (citations omitted). A requested fee is excessive if "'after review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee.'" *Fell v. Rambo*, 36 S.W.3d 837, 852 (Tenn. Ct. App. 2000) (quoting Tenn. S. Ct. R. 8, DR 2–106(B); *In re Davis's Est.*, 719 S.W.2d 526, 528 (Tenn. Ct. App. 1986)).

Ruling in the alternative, the circuit court addressed eight of the above factors and concluded that Mrs. Faddoul's request for $168,112.50 in attorney's fees was unreasonable. Addressing the first factor—"the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service

properly"—the court found that while order of protection appeals are "intended to be swift to provide immediate relief to victims[,]" Mrs. Faddoul's attorneys spent over 450 hours on this case "due to numerous filings made that were outside of the scope of the appeal of the order of protection." While we agree with the circuit court's finding that the total hours expended by both parties were excessive for a case of this nature, that was not due solely to "numerous filings" by Mrs. Faddoul. To the contrary, Mr. Beyer was responsible for most of the "numerous filings" to which Mrs. Faddoul's attorneys had to respond. For example, Mr. Beyer's discovery requests in general sessions court prompted Mrs. Faddoul, originally a pro se litigant, to retain counsel. Mr. Beyer then submitted numerous filings attempting to delay the proceedings before the general sessions court, including an objection to Mrs. Faddoul's notice of hearing, a collateral attack on the general sessions court's denial of his request to conduct discovery, and an attempt to stay all proceedings pending his appeal of that denial to this court, which he later dismissed.[15] These actions, inter alia, surely increased the time and labor required by Mrs. Faddoul's counsel as well as the attorney's fees incurred. Simply put, the record reveals that this case was protracted and complicated by Mr. Beyer's aggressive litigation tactics. Thus, we find that the evidence preponderates against the circuit court's finding on this factor.

As to the second factor—"the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer"—the court found that an order of protection matter of this type should not have prevented Mrs. Faddoul's counsel from taking on other business. We agree.

As to the third factor—"the fee customarily charged in the locality for similar legal services"—the court found that the "hours and total amount of fees sought are higher than the normal amounts in the 21st judicial district." We also agree with this finding.

Regarding the fourth factor—"the results obtained"—the court determined that Mrs. Faddoul was not the prevailing party on appeal, relying in part on the fact that it modified the order of protection in Mr. Beyer's favor by removing the restrictions to his second amendment rights. We respectfully disagree, having determined that the evidence preponderates against the circuit court's finding that Mrs. Faddoul did not "win the appeal."

Our Supreme Court has found that "a 'prevailing party' is one who has succeeded 'on any significant issue in litigation which achieves some of the benefit sought in bringing suit.'" *Fannon*, 329 S.W.3d at 431 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983)). By obtaining a general sessions judgment in her favor and having that judgment affirmed by the circuit court upon Mr. Beyer's appeal, Mrs. Faddoul achieved the primary benefit sought in both courts. The mere fact that Mr. Beyer

---

[15] On pages 4 through 6 of this opinion, we discuss the procedural history of this case in more detail, revealing the "numerous filings" by Mr. Beyer that significantly increased the attorney's fees Mrs. Faddoul incurred.

prevailed on one issue, by having his second amendment rights restored by the circuit court, does not mitigate the fact that Mrs. Faddoul prevailed regarding the core reason for bringing the petition by having the order of protection affirmed by the circuit court. Thus, Mrs. Faddoul was the prevailing party in both the general sessions court and the circuit court.

The court further found that the sixth and seventh factors—"the nature and length of the professional relationship with the client" and the "experience, reputation, and ability of the lawyer or lawyers performing the services"—weighed in favor of Mrs. Faddoul, noting that Mrs. Faddoul was represented by four total attorneys in this matter, all of whom are in good standing, and that she retained her counsels' services in 2022. Neither party disputes these findings.

With respect to the eighth factor—"whether the fee is fixed or contingent"—the court found that the fees charged by Mrs. Faddoul's attorneys were a blend of fixed and contingent. As to the tenth factor—"whether the fee agreement is in writing"—the court found that Mrs. Faddoul's fee arrangements with her attorneys were in writing. We agree with both findings.

While we agree with the circuit court's finding that the total fees requested by Mrs. Faddoul were excessive, the record fully demonstrates that some of the attorney's fees and expenses Mrs. Faddoul incurred were reasonable and necessary in obtaining the order of protection in the general sessions court and in successfully defending the appeal of that judgment to the circuit court. Because an award of reasonable and necessary attorney's fees incurred by Mrs. Faddoul is mandated by Tennessee Code Annotated § 36-3-617(a)(1), we reverse the circuit court's decision regarding attorney's fees and remand with instructions for the circuit court to award Mrs. Faddoul the reasonable and necessary attorney's fees she incurred in obtaining the order of protection in the general sessions court and in successfully defending the appeal of that judgment to the circuit court.

### III. DISCRETIONARY COSTS

Mrs. Faddoul further contends that the circuit court abused its discretion in denying her request for discretionary costs for court reporter expenses under Tennessee Rule of Civil Procedure 54.04(2) because she was the prevailing party, and the court reporter's invoices clearly state both the purpose of the discretionary costs and that they were "necessarily and reasonably incurred." Mr. Beyer maintains that the circuit court did not abuse its discretion in denying Mrs. Faddoul an award of discretionary costs because she

failed to adequately explain the purpose of the costs she was seeking, and those costs were neither reasonable nor necessary.[16]

In her application for attorney's fees and costs, Mrs. Faddoul sought discretionary costs under Rule 54.04(2) in the amount of $5,248.62, representing her court reporter expenses incurred "for hearings, depositions, and the partial trial in this matter." Mrs. Faddoul concedes in her principal brief that $816.75 of her original Rule 54.04(2) request was for "court-reporter charges for pre-trial hearings, which are not recoverable under Rule 54.04(2)." *See Duran v. Hyundai Motor Am., Inc.*, 271 S.W.3d 178, 216 (Tenn. Ct. App. 2008) ("[C]ourt reporter fees for attending pretrial hearings are not permitted by Tenn. R. Civ. P. 54.04(2)."). Nevertheless, she contends that Rule 54.04(2) entitles her to her court reporter expenses for the full day hearing before the general sessions court, the one-and-a-half-day hearing before the circuit court, and the deposition of Detective Eaves. We agree.

Tennessee Rule of Civil Procedure Rule 54.04(2) permits the prevailing party in a civil action to recover certain litigation expenses, including "reasonable and necessary court reporter expenses **for depositions or trials**[.]" *Freeman v. CSX Transp., Inc.*, 359 S.W.3d 171, 179 (Tenn. Ct. App. 2010) (citing Tenn. R. Civ. P. 54.04(2)) (emphasis added). The purpose of Rule 54.04(2) is not to punish the losing party, but to make the prevailing party whole. *Duran*, 271 S.W.3d at 214–15 (citing *Owens v. Owens*, 241 S.W.3d 478, 496–97 (Tenn. Ct. App. 2007); *Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d 78, 85 (Tenn. Ct. App. 2000)).

The burden is on the movant to convince the trial court that it is entitled to discretionary costs, *Carpenter v. Klepper*, 205 S.W.3d 474, 490 (Tenn. Ct. App. 2006); however, as a general matter, courts should "award discretionary costs to a prevailing party if the costs are reasonable and necessary and if the prevailing party has filed a timely and properly supported motion." *Freeman v. CSX Transp., Inc.*, 359 S.W.3d 171, 179-80 (Tenn. Ct. App. 2010) (quoting *Mass. Mut. Life Ins. Co.,* 104 S.W.3d at 35. *Massachusetts Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 35 (Tenn. Ct. App. 2002).

A party can convince the trial court that it is entitled to these costs by filing a timely and properly supported motion demonstrating that: (1) it is the "prevailing party," (2) the costs being sought are specifically identified in Rule 54.04(2), (3) the costs are necessary and reasonable, and (4) it has not engaged in conduct during the litigation that warrants depriving it of the discretionary costs to which it might otherwise be entitled. *Duran*, 271 S.W.3d at 215 (citing *Trundle v. Park*, 210 S.W.3d 575, 582 (Tenn. Ct. App. 2006); *Waggoner Motors, Inc. v. Waverly Church of Christ*, 159 S.W.3d 42, 65–66 (Tenn. Ct. App. 2004); *Mass. Mut. Life Ins. Co.*, 104 S.W.3d at 35–36).

---

[16] Mr. Beyer also contends that Mrs. Faddoul is not entitled to recover her discretionary costs because she was not the prevailing party; however, we have ruled otherwise and find it unnecessary to discuss this issue again.

In denying Mrs. Faddoul's request for discretionary costs, the circuit court found as follows:

> Ms. Faddoul's exuberant request for discretionary costs is not constrained by Rule 54.04(2). She seeks reimbursement of "online research," "color printing," "printing," "Road Runner Delivery," and "certified copy charges" assessed by the Delaware Secretary of State. To be sure, Ms. Faddoul does include charges incurred from court reporters. So at least some of the expenses she wants this Court to impose on Mr. Beyer under the label of discretionary costs fit a category allowed by Rule 54.04(2). Nevertheless, the Court does not find, on the merits, that the equities of this case justify an award of discretionary costs in her favor. First, neither party is a prevailing party in this case. Second, Ms. Faddoul has not sufficiently explained the purpose of the court reporter fees she includes and the Court cannot determine from the information provided whether those services were both reasonable and necessary.

As we found in a previous section of this opinion, Mrs. Faddoul was the prevailing party in both the general sessions and circuit courts. We also determined that she has not engaged in conduct during the litigation that warrants depriving her of the discretionary costs to which she might otherwise be entitled. *See Duran*, 271 S.W.3d at 215.

Further, the purpose of the court reporter costs Mrs. Faddoul seeks are clear from the documentation filed in support of her application for attorney's fees and costs. Specifically, Mrs. Faddoul submitted an itemization of expenses that describes the discretionary costs she seeks under Rule 54.04(2) as court reporter costs, as well as invoices which detail the date and description of the services and proceedings and provide a line-item delineation of charges.[17]

In arguing that Mrs. Faddoul's court reporter expenses were "largely neither reasonable or necessary," Mr. Beyer claims that Mrs. Faddoul incurred costs for the video deposition of Detective Eaves "with no apparent understanding of Tenn. R. Evid. 804 as applicable to a witness that was not considered 'unavailable' under the general rules of evidence." But the circuit court made no finding that Detective Eaves was not "unavailable" under Tennessee Rule of Evidence 804. To the contrary, at the end of the

---

[17] The description of the invoice dated February 6, 2023, states, "FADDOUL vs. BEYER – 2/6/23 WILLIAMSON COUNTY GENERAL SESSIONS PROCEEDINGS." The description of the invoice dated January 2, 2024, states "Videotaped deposition of Lee Eaves." The description of the January 8, 2024 invoice states, "Hearing before Judge Woodruff." And while the invoice dated January 19, 2024, does not include a description, it is clear that it was for the half-day hearing before the circuit court on January 18, 2024.

full-day hearing on January 8, 2024, the circuit court gave the parties a choice to either declare Detective Eaves "unavailable without objection" or reset the hearing until such a time as he was available to testify. As noted previously, Mr. Beyer chose to reset the hearing. The circuit court also made no finding that Mrs. Faddoul had engaged in conduct during the course of the litigation that should preclude her from recovering discretionary costs.

We find that some of Mrs. Faddoul's requested court reporter expenses are specifically identified and authorized in Rule 54.04(2), and they were reasonable and necessary under an express reading of Rule 54.04(2). Thus, Mrs. Faddoul is entitled to her court reporter fees allowable under Rule 54.04(2)[18] for the hearings before the general sessions and circuit courts and the deposition of Detective Eaves. These include a $250.00 appearance fee for the hearing before the general sessions court, a $175.00 appearance fee for the deposition of Detective Eaves, a $275.00 appearance fee for the full-day hearing before the circuit court, a $137.50 appearance fee for the half-day hearing before the circuit court, and a $412.50 transcription fee for the deposition of Detective Eaves. *Christian v. Harding*, 1993 WL 156164, at *1 (Tenn. Ct. App. May 14, 1993) ("Recoverable discretionary costs include court reporter fees [and] the costs of transcribing depositions.") (citing *Lock v. Nat. Union Fire Ins. Co.*, 809 S.W.2d 483, 489 n.3, 490 (Tenn. 1991)).

Accordingly, we reverse in part and affirm in part the circuit court's denial of Mrs. Faddoul's discretionary costs. Adding the allowable fees as stated above, we find that Mrs. Faddoul is entitled to discretionary costs for court reporter expenses in the amount of $1,294.58. On remand, we direct the circuit court to award Mrs. Faddoul these discretionary costs.

## IV.    ATTORNEY'S FEES ON APPEAL

Mrs. Faddoul also requests her attorney's fees on appeal arguing that "Section 36-3-617(a)(1) provides that Mrs. Faddoul is entitled to her attorney's fees and expenses associated with this appeal." Our Supreme Court held in accordance with this premise in *New v. Dumitrache*, holding that "section 36-3-617 clearly authorizes awarding attorney's fees and costs incurred in obtaining an order of protection or the extension of an order of protection, or in **defending an appeal involving the issuance or extension of an order of protection."** 604 S.W.3d at 21–22 (emphasis added).

---

[18] Mrs. Faddoul's invoices reveal that some of the costs she seeks were for the preparation of hearing transcripts. In an unreported opinion styled *Smartt v. NHC Healthcare/McMinnville, LLC*, No. M2007-02026-COA-R3-CV, 2009 WL 482475, (Tenn. Ct. App. Feb. 24, 2009), this court found that costs the cost of preparing a hearing transcript for appeal may not be awarded under Rule 54.04(2) but must instead be sought under Tennessee Rule of Appellate Procedure 40(c). *Id.* at *32. In accordance with this precedent, we decline to award Mrs. Faddoul the costs she seeks for the preparation of hearing transcripts under Rule 54.04(2).

Accordingly, we find that Mrs. Faddoul is entitled to an award of her reasonable and necessary attorney's fees incurred on appeal and remand to the circuit court for a determination of the amount.

## CONCLUSION

For the reasons stated above, the judgment of the circuit court is affirmed in part, reversed in part, and this matter is remanded to the trial court for proceedings consistent with this opinion. Costs of this appeal are assessed against the appellee, Edward James Beyer, for which execution may issue.

_____
FRANK G. CLEMENT JR., P.J., M.S.